Robert S. Westermann (VSB No. 43294)
Sheila deLa Cruz (VSB No. 65395)
Hirschler Fleischer, P.C.
The Edgeworth Building
2100 East Cary Street
Richmond, Virginia 23223
P.O. Box 500
Richmond, Virginia 23218-0500
Phone: (804) 771-9500
Facsimile: (804) 644-0957
Email: rwestermann@hf-law.com
       sdelacruz@hf-law.com

*Proposed Counsel for Debtors-in-Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| In re: | ) |
| | ) |
| MMR HOLDINGS, INC., et al.,[1] | )  Case No. <u>10-32658-DOT</u> |
| | )  Chapter 11 |
| Debtors. | ) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS:
(A) AUTHORIZING DEBTORS TO (I) OBTAIN POST-PETITION FINANCING,
AND (II) UTILIZE CASH COLLATERAL; (B) GRANTING ADEQUATE
PROTECTION; AND (C) SCHEDULING INTERIM AND FINAL HEARINGS**

The Debtors-in-Possession (the "Debtors"), by proposed counsel, hereby move this Court

(the "Motion"), pursuant to sections 105(a), 361, 362, 363, and 364 of Title 11 of the United

States Code (the "Bankruptcy Code") and Rules 2002 and 4001 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order authorizing MMR

Holdings, Inc. ("MMR Holdings"), to enter into certain financing arrangements with its pre-

---

[1] The fourteen (14) Debtors in the cases are MMR Holdings, Inc., and its subsidiaries, *i.e.*, OpenSided MRI of Atlanta, LLC, OpenSided MRI of Cleveland, LLC, OpenSided MRI of Cincinnati, LLC, OpenSided MRI of Denver, LLC, OpenSided MRI of Indianapolis, LLC, OpenSided MRI of Kansas, LLC, OpenSided MRI of Las Vegas, LLC, OpenSided MRI of Louisville, LLC, OpenSided MRI of Oklahoma City, LLC, OpenSided MRI of Orange County, LLC, OpenSided MRI of San Antonio, LLC, OpenSided MRI of New Orleans, LLC, and OpenSided Management, LLC.

petition secured lender, Bank of America, N.A. (as amended, modified, supplemented, restated, and in effect from time to time, collectively referred to herein as the "DIP Facility"). The DIP Facility consists of a senior secured, super-priority revolving credit facility of $400,000. The DIP Facility is governed by: (a) the Debtor-in-Possession Loan Agreement (Asset Based) dated April 13, 2010, between MMR Holdings as the borrower, and Bank of America, N.A., as the lender (the "DIP Lender" or "BOA"); (b) the Debtor-In-Possession Revolving Promissory Note dated April 13, 2010 and executed by MMR Holdings for the benefit of BOA; and (c) if any, related guaranties executed by the Debtors (collectively, the "DIP Financing Agreements"). True and accurate copies of the DIP Financing Agreements are attached hereto as **Exhibit A**.

The Debtors seek authority to enter into, deliver, and perform under the DIP Financing Agreements and to use cash collateral for the interim period beginning on the Petition Date and up to and including May 13, 2010 (the "Interim Period"). The Debtors also seek approval of certain adequate protection to the DIP Lender. Finally, the Debtors respectfully request that the Court schedule interim and final hearings with respect to all of the relief requested herein. In support of their Motion, the Debtors rely upon and incorporate by reference the Declaration of Neil R. Burgess in Support of Chapter 11 Petitions and First Day Pleadings (the "Burgess Declaration"), filed concurrently with the Court in this bankruptcy proceeding. In further support of the Motion, the Debtors respectfully state the following:

## JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b).

2. Venue in this district with respect to the bankruptcy proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief requested herein are Bankruptcy Code sections 105(a), 361, 362, 363, 364, and 507. Such relief is warranted pursuant to Bankruptcy Rule 4001.

## FACTUAL BACKGROUND

4.      On April 14, 2010 (the "Petition Date"), the Debtors filed voluntary petitions with this Court for relief under Chapter 11 of the Bankruptcy Code. The factual background regarding the Debtors, including their business operations, capital and debt structure, and the events leading to the filing of these bankruptcy proceedings, is set forth in the Burgess Declaration.

5.      The Debtors continue to manage and operate their businesses as debtors-in-possession under sections 1107 and 1108 of the Bankruptcy Code.

6.      No trustee or examiner has yet been appointed in these cases, and no committees have yet been appointed or designated.

7.      Concurrently with the filing of this Motion, the Debtors have filed a separate motion seeking procedural consolidation and joint administration of these Chapter 11 cases.

8.      MMR Holdings is a privately-held Virginia corporation. MMR Holdings manages the operations and affairs of the thirteen (13) other Debtors (collectively, the "Subsidiary Debtors" or "subsidiaries"), and holds between 70% and 100% of the ownership interests in those Debtors. Twelve (12) of the remaining Debtors (specifically, the "Site Debtors") operate independent diagnostic imaging facilities throughout the country. The remaining Debtor, *i.e.*, OpenSided Management, LLC ("OML"), provides marketing and customer service assistance to all of the Debtors.

**RELIEF REQUESTED**

9.  By this Motion, all of the Debtors seek entry of interim and final orders authorizing and/or approving, inter alia:

(a) MMR Holdings to obtain post-petition financing consisting of a $400,000 senior revolving credit facility from the DIP Lender, with funds available thereunder for use in accordance with the budget (the "Budget") attached hereto as **Exhibit B**, including payment in full the Pre-Petition Indebtedness (as defined below) pursuant to sections 364(c), (d), and (e) of the Bankruptcy Code;

(b) Subject to the Professional Fee Carve-Out, the grant of superpriority claim status to the claims of the DIP Lender pursuant to Bankruptcy Code section 364(c)(1);

(c) As security for the repayment of the borrowings and all other obligations arising under the DIP Facility, MMR Holdings and the other Debtors grant to the DIP Lender first priority security interests in and liens upon substantially all of the property and assets of the Debtors (the "DIP Collateral"), subject to the Professional Fee Carve-Out and the Permitted Prior Liens (as defined in the Interim Order), excluding avoidance actions and pursuant to Bankruptcy Code sections 364(c)(2), (c)(3), and (d);

(d) The Debtors to use the pre-petition Cash Collateral (as defined below) of BOA, to provide certain protections with respect to any diminution in the value of the BOA's interest in the Pre-Petition Collateral (including Cash Collateral) resulting from the Debtors' use, sale, or lease of such collateral and the imposition of the automatic stay, such adequate protection to include superpriority claims for the obligations owed to BOA subject only to the Professional Fee Carve-Out and the claims of the DIP Lender under the DIP Facility pursuant to Bankruptcy Code sections 361, 363(e), 364(e), and 364(c)(1);

(e) The modification of the automatic stay to the extent set forth in the DIP Agreement pursuant to Bankruptcy Code section 362;

(f) Acknowledging that the Debtors agree and stipulate to the amount, validity, enforceability, perfection, secured status and lack of claims by the Debtors with respect to certain pre-petition liens and claims, each as set forth in the proposed Order;

(g) Limiting surcharges of collateral pursuant to section 506(c) of the Bankruptcy Code; and

(h) Scheduling of a final hearing (the "Final Hearing") on this Motion and establishing notice procedures in respect of the Final Hearing by this Court to

consider entry of a final order (the "Final Order") authorizing the DIP Facility on a final basis pursuant to Bankruptcy Rule 4001.

## BASIS FOR RELIEF

**A.  The Debtors Have an Immediate Need for Liquidity in the Form of Their Pre-Petition Collateral and the DIP Facility.**

10. As set forth in the Burgess Declaration, the Debtors' pre-petition secured debts arise from two sources. First, the Site Debtors' three (3) equipment vendors hold liens that are partially secured by the equipment used at the Site Debtors' numerous diagnostic imaging facilities, and/or accounts receivable of certain Site Debtors.

11. The Debtors' other long term, secured debt is a BOA working capital line of credit (the "Pre-Petition Credit Line"), which is essential to the Debtors' ability to finance their overall day to day operations. The Pre-Petition Credit Line is structured as a loan to MMR Holdings, and is supported by guaranties from the Site Debtors. Nine (9) of the Site Debtors have pledged all of their accounts receivable to BOA, in addition to other collateral pledged by the Debtors (the "Pre-Petition Collateral").

12. MMR Holdings uses the Pre-Petition Credit Line to provide working capital loans to the remaining Debtors as needed, and such Debtors make payments to MMR Holdings as they receive payments on accounts receivable. This arrangement provides certain advantages for all of the Debtors.

13. First, the Debtors' cash flows have been more reliable in aggregate than on an individual basis because a variety of factors can negatively affect any one site.

14. Second, it has been impractical to arrange individual working capital loan facilities for each Site Debtor. As the Site Debtors have generally been unable to finance their operations without the Pre-Petition Credit Line, MMR Holdings devoted its cash available for

debt service to reducing the amount owed on such credit line and preserving the Site Debtors' access to capital.

15. The Debtors have an immediate need to access their Pre-Petition Collateral, including any cash collateral generated thereby (the "Cash Collateral"), to permit, among other things, the continuation of their respective businesses in the ordinary course of business, and to complete the restructuring process as described in the Burgess Declaration. The Debtors' use of the Pre-Petition Collateral in general and access to the Cash Collateral are necessary to ensure that the Debtors have sufficient working capital and liquidity to operate their respective businesses and thereby preserve the going concern values of the Debtors' estates.

16. In addition, to continue paying their employees and to maintain business operations during these bankruptcy proceedings, the Debtors must have immediate access to continued and additional financing in the form of the DIP Facility. Thus, the Debtors conclude that such financing will enable the Debtors to restore critical relationships, retain employees, and to maintain or restore trade terms for the purposes of continuing the Site Debtors' use of various equipment. Moreover, access to the DIP Facility on an interim basis is necessary to avoid immediate and irreparable harm to all of the Debtors pending a final hearing on this matter.

17. As of the Petition Date, MMR Holdings owes a total amount of $435,000 (the "Pre-Petition Indebtedness") on the Pre-Petition Credit Line.

**B.     Terms of the DIP Facility.**

18.    The relevant terms of the DIP Facility are as follows:[2]

| | |
|---|---|
| Debtor Borrower: | MMR Holdings, Inc. |
| DIP Lender: | Bank of America, N.A. |
| Commitment: | A senior revolving credit facility of $400,000. |
| Borrowing Availability: | Advances to MMR Holdings from time to time, provided that the aggregate amount of such Advances outstanding as of any date of determination does not exceed the Borrowing Base. |
| Use of Loan Proceeds: | The proceeds will be used (a) to repay the Pre-Petition Liabilities owed by MMR Holdings to BOA; (b) to pay fees and expenses incurred in connection with the transactions contemplated hereby and by MMR Holdings' Bankruptcy Case, including the Professional Fee Carve-Out; (c) for general corporate purposes; and (d) for payments permitted to be made under and in accordance with Borrowing Orders that are in a form acceptable to the DIP Lender and approved by the Bankruptcy Court. |
| Term: | The DIP Financing Agreements shall be effective as of the date that the DIP Financing Agreements are approved on an interim basis by the Court and shall continue in full force and effect until such time as MMR Holdings' Loans with BOA have been paid in full, or until December 31, 2010. |

---

[2] This summary refers to the provisions and the defined terms contained in the DIP Financing Agreements. The DIP Financing Agreements shall control in the event of any inconsistencies between the provisions of the Motion and the DIP Financing Agreements.

| | |
|---|---|
| Priority and Liens: | The DIP Lender shall have a Security Interest, pursuant to a first priority lien, on the Collateral as defined in the DIP Financing Agreements (which Collateral includes property and assets of MMR Holdings and its subsidiaries), under section 364(d) of the Bankruptcy Code. All Obligations shall constitute administrative expenses of MMR Holdings and its subsidiaries in the Bankruptcy Court, with priority under section 364(c)(1) of the Bankruptcy Code over any and all other administrative expenses of the kind under any other provision of the Bankruptcy Code. |
| Unused Commitment Fee: | From the date of the DIP Financing Agreements, a fee shall accrue at the rate of 1.00% per annum on the average daily unused amount of the Commitments. Such fee shall be calculated on a quarterly basis by the DIP Lender and shall be due and payable by MMR Holdings in arrears on the last business day of each fiscal quarter of MMR Holdings occurring after the date of the DIP Agreement and on the date of the Expiration Date. |
| Other Fees and Expenses: | MMR Holdings is required to have paid the DIP Lender all fees, costs, and expenses specified in the DIP Financing Agreements as are then due and payable. |
| Interest Rate: | Variable interest rate subject to change from time to time based on changes to the LIBOR Daily Floating Rate. If such rate is not available for any reason, then the rate for that interest period will be determined by an alterative Index as selected by the DIP Lender. |
| Default Interest: | 8.750 percentage points over the Index. |

| | |
|---|---|
| Events of Default: | The DIP Financing Agreements contain usual and customary events of default for facilities of this type, including, but not limited to, the following events of default: |
| | (a) MMR Holdings' failure to make any payment when due under the DIP Documents; |
| | (b) MMR Holdings' failure to comply with or to perform any other term, obligation, covenant, or condition contained in the DIP Documents; |
| | (c) Either (i) the appointment in the Bankruptcy Case of a trustee or of any examiner having expanded powers to operate all or any part of the business of MMR Holdings or its subsidiaries, or (ii) the conversion of the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code; |
| | (d) The entry of any order which provides relief from the automatic stay otherwise imposed pursuant to section 362 of the Bankruptcy Code which permits any creditor to realize upon, or to exercise any right, or remedy with respect to the Collateral; |
| | (e) The Creditors' Committee or any other person or entity with the requisite standing challenges the validity, perfection, priority, or enforceability of the Pre-Petition Liabilities, or any lien, or encumbrance granted with respect to the Pre-Petition Loans, or with respect to the DIP Documents, or any such liens or encumbrances are determined to be null and void, invalid, or unenforceable by the Bankruptcy Court or any other court of competent jurisdiction; and |
| | (f) The filing of any application by MMR Holdings or its subsidiaries without the prior written consent of BOA for the approval of any super-priority claim in the Bankruptcy Case which is pari passu with or senior to the priority of the claims of the DIP Lender for the Obligations, or any such super-priority claim under the Bankruptcy Code. |

19. The Debtors' efforts to obtain unsecured and/or other secured financing similar to the DIP Facility with BOA were unsuccessful.

## APPLICABLE AUTHORITY

20. If a debtor is unable to obtain unsecured credit allowable as an administrative expense under Bankruptcy Code section 503(b)(1), then the Court, after notice and a hearing, may authorize the debtor to obtain credit or incur debt (a) with priority over any or all administrative expenses of the kind specified in Bankruptcy Code section 503(b) or 507(b); or (b) secured by a lien on property of the estate that is not otherwise subject to a lien; or (c) secured by a junior lien on property of the estate that is subject to a lien. See 11 U.S.C. § 364(c).

21. Furthermore, if a debtor is unable to obtain credit under the provisions of Bankruptcy Code section 364(c), the debtor may obtain credit secured by a senior or equal lien on property of the estate that is already subject to a lien, commonly called a "priming lien." 11 U.S.C. § 364(d).

22. Bankruptcy Rule 4001(c)(2) governs the procedures for obtaining authorization to obtain post-petition financing and provides, in relevant part:

> The court may commence a final hearing on a motion for authority to obtain credit no earlier than 15 days after service of the motion. If the motion so requests, the court may conduct a hearing before such 15 day period expires, but the court may authorize the obtaining of credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

Fed. R. Bankr. P. 4001(c)(2).

23. Bankruptcy Rule 4001(d) provides in relevant part that (i) a motion for approval to modify or terminate the automatic stay shall be served on any official creditors' committee, on the creditors included on the list filed under Bankruptcy Rule 1007(d), and on such other entities as the court may direct, and (ii) objections may be filed within fifteen (15) days of the mailing of

the notice of the motion and the time for filing objections thereto. See Fed. R. Bankr. P. 4001(d)(1) – (2).

A. **The DIP Financing Agreements Should Be Approved.**

24. Prior to the Petition Date, the Debtors contacted several potential lenders to determine whether alternative financing options were available to the Debtors. Due to the nature of the Debtors' business operations and the overall declining economic conditions, the Debtors determined that it was not possible to obtain post-petition financing on an unsecured basis or on a junior priority basis to BOA's pre-petition claims within the time period that the Debtors' liquidity situation permitted. See, In re Circuit City Stores, Inc., Case No. 08-35653 (KRH) (Bankr. E.D. Va. Dec. 9, 2008) (authorizing credit on a super-priority basis); see also, In re The Rowe Cos., Case No. 06-11142 (SSM) (Bankr. E.D. Va. Oct. 16, 2006 (same); see also, In re US Airways, Inc., Case No. 04-13819 (SSM) (Bankr. E.D. Va. Feb. 28, 2005) (same); see also, In re NTELOS, Inc., Case No. 03-32049 (DOT) (Bankr. E.D. Va. March 24, 2003) (same); see also, In re AMF Bowling Worldwide, Inc., Case No. 01-61119 (DHA) (Bankr. E.D. Va. Aug. 8, 2001) (same).

25. The Debtors negotiated the DIP Financing Agreements with the DIP Lender in good faith, at arm's length, and pursuant to the Debtors' sound business judgment. Provided that this judgment does not run afoul of the provisions of and policies underlying the Bankruptcy Code, courts grant a debtor considerable deference in acting in accordance with its business judgment. See, e.g., Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.), 789 F.2d 1085, 1088 (4th Cir. 1986) (approving debtor in possession financing necessary to sustain seasonal business); see also, In re Ames Department Stores, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("[C]ases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing

agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party in interest.").

26. The financing under the DIP Financing Agreements provides significant liquidity to the Debtors and thus will enable the Debtors, *inter alia*: (a) to minimize disruption to the Debtors' businesses and on-going operations; (b) enhance the values of the Debtors' respective estates for the benefit of all the Debtors' creditors; (c) avoid immediate and irreparable harm to the Debtors, their creditors, businesses, employees, and assets; and (d) permit the Debtor to continue to pursue the restructuring process that is already well under way.

27. Such financing is the sole means of sustaining the Debtors' ongoing operations, thus preserving and enhancing the Debtors' going concern values. Without the financing provided by the DIP Facility, the Debtors will not be able to meet their operating expenses (including payroll), will suffer irreparable harm, and their entire reorganization efforts will be severely jeopardized.

28. The terms and conditions of the DIP Financing Agreements are fair and reasonable and were negotiated by the parties in good faith and at arm's length. Accordingly, the DIP Lender should be accorded the benefits of Bankruptcy Code section 364(e) in respect of the DIP Financing Agreements.

29. Repayment of the debts owed in connection with the Pre-Petition Indebtedness owed to BOA will not prejudice other creditors because the proposed Interim Order provides that the approval of the DIP Financing Agreements is without prejudice to the right of any official committee appointed in this case to contest or challenge the validity of the pre-petition liens, claims, or indebtedness of BOA. The Debtors assert that under the consensual arrangements

12

embodied in the DIP Financing Agreements, the repayment of the obligations under the Pre-petition Credit Line is appropriate.

30. Based upon the foregoing, the Debtors respectfully request that the Court approve the DIP Financing Agreement between MMR Holdings and the DIP Lender in accordance with the terms set forth in the Interim Order and the DIP Financing Agreements.

**B.   The Court Should Authorize the Use of Cash Collateral.**

31. In addition to the need for the DIP Facility, the Debtors' other pressing concern is the need for immediate use of the Cash Collateral of BOA pending a final hearing on this Motion. The Debtors require use of the Cash Collateral to be able to pay operating expenses, including payroll, and to pay vendors to ensure a continued supply of goods and services essential to the Debtors' continued viability.

32. Bankruptcy Code section 363(c)(2) provides that a debtor may not use, sell or lease cash collateral unless "(a) each entity that has an interest in such cash collateral consents; or (b) the court, after notice and hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). BOA, the pre-petition lender to MMR Holdings, has consented to the use of Cash Collateral by MMR Holdings on the terms and conditions set forth in the Interim Order.

33. Accordingly, based upon the foregoing, the Debtors respectfully request that the Court authorize MMR Holdings to use the Cash Collateral in accordance with the terms set forth in the Interim Order and DIP Financing Agreements. Such use includes, but is not limited to, the disbursement of Cash Collateral to the other Debtors in the ordinary course of the Debtors' business operations and intercompany arrangements and practices.

C.      **The Court Should Authorize the Debtors to Provide Adequate Protection.**

34.     In exchange for the Debtors' use of the Pre-Petition Collateral, including the Cash Collateral, the Debtors have agreed to provide certain adequate protection to BOA as a pre-petition lender.[3] To that end, the Debtors and BOA have negotiated, and the Debtors request that the Court approve, as of the Petition Date, certain protections of the interests of BOA in the Pre-Petition Collateral from any diminution resulting from the Debtors' use, sale, or lease of such collateral, and the imposition of the automatic stay.

35.     Such protections for BOA, as a pre-petition secured lender, include, among other things: (a) payment of interest, fees, and expense reimbursements as and when due under the Pre-Petition Credit Line; (b) adequate protection replacement liens on the post-petition DIP Collateral, subject only to the Professional Fee Carve-Out and the DIP Facility; and (c) a superpriority administrative claim subject only to the Professional Fee Carve-Out and the claims of the DIP Lender under the DIP Facility.

36.     The proposed adequate protection is intended to protect the value of BOA's pre-petition secured interest in the DIP Collateral as of the Petition Date. See, In re Nice, 355 B.R. 554, 563 (Bankr. N.D. W.Va. 2006) ("[A]dequate protection is solely a function of preserving the value of the creditor's secured claim as of the petition date due to a debtor's continued use of collateral"); see also, In re Kain, 86 B.R. 506, 513 (Bankr. W.D. Mich. 1988); see also, In re Beker Indus. Corp., 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986); see generally, In re JKJ Chevrolet, Inc., 117 F.3d 1413 (Table) (4th Cir. 1997).

37.     The Debtors conclude that the proposed adequate protection is fair and reasonable under sections 361(1) and (2) of the Bankruptcy Code. BOA has agreed to allow the Debtors to

---

[3] Bankruptcy Code section 364(d) requires that adequate protection be provided where the liens of secured creditors are being primed to secure the obligations under a debtor-in-possession financing facility. See 11 U.S.C. § 364(d).

14

use the Cash Collateral as the Debtors reorganize on the condition that the adequate protection described herein is provided and approved by the Court. Moreover, following the payment in full of substantially all of the Pre-Petition Indebtedness, BOA will retain very little Pre-Petition Collateral subject to adequate protection, and the Debtors' primary source of funding will be from the DIP Facility.

38. Based upon the foregoing, the Debtors respectfully request that the Court authorize the Debtors to provide certain adequate protections in accordance with the terms set forth in the Interim Order and the DIP Financing Agreements.

**D.  Modification of the Automatic Stay Is Appropriate.**

39. Section 362 of the Bankruptcy Code provides for an automatic stay upon the filing of a bankruptcy petition. The proposed Interim Order contemplates a modification of the automatic stay (to the extent applicable), to the extent necessary to: (a) entitle the DIP Lender to exercise its rights and remedies in accordance with the DIP Financing Agreement; and (ii) permit the Debtors to effect the adequate protection obligations and to incur all liabilities and obligations to BOA relating to the Pre-Petition Indebtedness and the DIP Lender under the DIP Facility.

40. Stay modification provisions of this kind are ordinary and standard features of post-petition, debtor-in-possession financing facilities and, in the Debtors' business judgment, are reasonable under the present circumstances. Accordingly, the Debtors respectfully request that the Court authorize the modification of the automatic stay in accordance with the terms set forth in the Interim Order and the DIP Financing Agreements.

**E.  Interim Approval of the DIP Financing Agreements Should Be Granted.**

41. As set forth above, Bankruptcy Rules 4001(b) and (c) provide that a final hearing on a motion to use cash collateral pursuant to Bankruptcy Code section 363, and to obtain credit

under Bankruptcy Code section 364, may not be commenced earlier than fifteen (15) days after the service of such motion. However, upon request, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral and the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to the debtor's estate.

42.   The Debtors request that the Court schedule and conduct a preliminary hearing on the Motion and authorize the Debtors from and after the entry of the Interim Order until the Final Hearing to obtain credit under the terms contained in the DIP Financing Agreements and to utilize Cash Collateral.

43.   Courts in this district have granted similar relief in other large chapter 11 cases. See, e.g., In re Circuit City Stores, Inc., Case No. 08-35653 (KRH) (Bankr. E.D. Va. Nov. 10, 2008); see also, In re Movie Gallery, Inc., Case No. 07-33849 (DOT) (Bankr. E.D. Va. Nov. 14, 2007); see also, In re The Rowe Cos., Case No. 06-11142 (SSM) (Bankr. E.D. Va. Sept. 21, 2006).

44.   Accordingly, based upon the foregoing, the Debtors respectfully request that the Court grant interim approval of the DIP Financing Agreements in accordance with the terms set forth in the Interim Order and the DIP Financing Agreements.

**F.   Waiver of The Ten-Day Stay Provided by Bankruptcy Rule 6004 is Appropriate.**

45.   Bankruptcy Rule 6004(h) provides: "An order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise." The Debtors request that the Court waive this ten-day stay with respect to those aspects of the Motion that do not implicate use of cash collateral. For the reasons discussed above, initial funding of amounts under the DIP Facility is critical to the continuing operations of the Debtors.

16

**G.       Establishing Notice Procedures and Scheduling Final Hearing.**

46.     Notice of this Motion will be given to: (i) the Office of the United States Trustee for the Eastern District of Virginia; (ii) counsel for the DIP Lender and BOA; (iii) the Debtors' twenty (20) largest unsecured creditors; (iv) the Debtors' other secured creditors; and (v) known counsel for the Debtors' unsecured and/or secured creditors. The Debtors submit that, under the circumstances, no other or further notice of the Motion is required.

47.     The Debtors further respectfully request that the Court schedule the Final Hearing and authorize the Debtors to mail copies of the entered Interim Order, which fixes the time, date, and manner for the filing of objections, to the Initial Notice Parties and (i) any party that has filed prior to such date a request for notices with this Court; (ii) counsel for any official committee(s), if any; (iii) the Securities and Exchange Commission; and (iv) the Internal Revenue Service. The Debtors request that the Court consider such notice of the Final Hearing, including without limitation, notice that the Debtors will seek approval at the Final Hearing of a waiver of rights under section 506(c) of the Bankruptcy Code, to be sufficient notice under Bankruptcy Rule 4001 and Local Rule 2002-1.[4]

## WAIVER OF MEMORANDUM OF LAW

48.     Pursuant to Local Bankruptcy Rule 9013-1(G), and because there are no novel issues of law presented in the Motion and all applicable authority is set forth in the Motion, the Debtors request that the requirement that all motions be accompanied by a separate memorandum of law be waived.

---

[4] Local Rule 2002-1(A)(1) provides that "[e]xcept as stated elsewhere in the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, these Local Bankruptcy Rules, or by order of the Court, the proponent of any action shall give notice to all parties affected thereby."

## NO PRIOR REQUEST

49. No previous motion for the relief sought herein has been made to this or any other Court.

## CONCLUSION

WHEREFORE the Debtors respectfully request that the Court: (i) enter an order substantially in the form of the proposed Interim Order attached here to as **Exhibit C**; (ii) after the Final Hearing, enter the Final Order substantially in the form that shall be filed with the Court; and (iii) grant the Debtors such other and further relief as is just.

Dated: April 14, 2010                             MMR HOLDINGS, INC., et al.


                                        By /s/ Robert S. Westermann
                                                  Counsel

Robert S. Westermann (VSB No. 43294)
Sheila deLa Cruz (VSB No. 65395)
Hirschler Fleischer, P.C.
The Edgeworth Building
2100 East Cary Street
Richmond, Virginia 23223
P.O. Box 500
Richmond, Virginia 23218-0500
Phone: (804) 771-9500
Facsimile: (804) 644-0957
Email:  rwestermann@hf-law.com
        sdelacruz@hf-law.com

*Proposed Counsel for the Debtors*

## CERTIFICATE OF SERVICE

I hereby certify that on April 14, 2010, a true and correct copy of the foregoing Motion was served using the Court's ECF system, and via overnight delivery (next business day), facsimile, electronic mail, and/or first class mail, postage prepaid, to the Office of the United States Trustee, the Debtors' 20 largest unsecured creditors, the Debtors' secured creditors, the DIP Lender, and any known legal counsel for the Debtors' secured and/or unsecured creditors (all as listed on Schedule A attached hereto).

/s/    Robert S. Westermann
Proposed Counsel