Robert S. Westermann (VSB No. 43294)
Sheila deLa Cruz (VSB No. 65395)
Hirschler Fleischer, P.C.
The Edgeworth Building
2100 East Cary Street
Richmond, Virginia 23223
P.O. Box 500
Richmond, Virginia 23218-0500
Phone: (804) 771-9500
Facsimile: (804) 644-0957
Email: rwestermann@hf-law.com
          sdelacruz@hf-law.com

*Proposed Counsel for Debtors-in-Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| MMR HOLDINGS, INC., <u>et al.</u>,[1] | ) | Case No. 10-32658-DOT |
| | ) | Chapter 11 |
| Debtors. | ) | |

**INTERIM ORDER GRANTING DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS: (A) AUTHORIZING DEBTORS TO (I) OBTAIN POST-PETITION FINANCING, AND (II) UTILIZE CASH COLLATERAL; (B) GRANTING ADEQUATE PROTECTION; AND (C) SCHEDULING INTERIM AND FINAL HEARINGS**

Upon the motion (the "Motion")[2] of the Debtors for an Order, pursuant to Sections

105(a), 361, 362, 363, and 364 of Title 11 of the United States Code (the "Bankruptcy Code") and

Rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for

entry of an order authorizing MMR Holdings, for the benefit of all of the Debtors, to:

(i) Obtain credit and incur debt, pursuant to sections 363, 364(c), and 364(d) of the

Bankruptcy Code, for the Interim Period commencing on the Petition Date, through and including

---

[1] The fourteen (14) Debtors in the cases are MMR Holdings, Inc., and its subsidiaries, *i.e.*, OpenSided MRI of Atlanta, LLC, OpenSided MRI of Cleveland, LLC, OpenSided MRI of Cincinnati, LLC, OpenSided MRI of Denver, LLC, OpenSided MRI of Indianapolis, LLC, OpenSided MRI of Kansas, LLC, OpenSided MRI of Las Vegas, LLC, OpenSided MRI of Louisville, LLC, OpenSided MRI of Oklahoma City, LLC, OpenSided MRI of Orange County, LLC, OpenSided MRI of San Antonio, LLC, OpenSided MRI of New Orleans, LLC, and OpenSided Management, LLC.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms as found in the Motion, and/or in the DIP Financing Agreements.

May, 13, 2010, up to the committed amount of $400,000 (on terms and conditions more fully described herein) secured by first priority, valid, priming, perfected, and enforceable liens (as defined in Section 101(37) of the Bankruptcy Code) on property of the Debtors' respective estates pursuant to sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, and with priority, as to administrative expenses, as provided in section 364(c)(1) of the Bankruptcy Code, subject to the terms and conditions contained herein (collectively, the "**DIP Facility**");

(ii) (a) Establish the DIP Facility pursuant to:

(I) that certain Debtor-In-Possession Loan Agreement, the Debtor-in-Possession Revolving Promissory Note, and any guaranties executed by one or more of the Debtors (all such documents, as amended, modified or supplemented in accordance with the terms of this Interim Order, collectively referred to herein as the "**DIP Financing Agreements**"), by and between, among others, MMR Holdings, as lead borrower for itself (the "**Lead Borrower**") and for the other Debtors (collectively with the Lead Borrower, the "**Borrowers**"), and Bank of America, N.A., the lender party thereto (the "**DIP Lender**" or "**BOA**"); and

(II) all other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to, or in favor of the DIP Lender, including, without limitation, security agreements, notes, guaranties, mortgages, and Uniform Commercial Code ("**UCC**") financing statements and all other related agreements, documents, notes, certificates, and instruments executed and/or delivered in connection therewith or related thereto (collectively, as may be amended, modified, or supplemented in accordance with the terms of this Interim Order and in effect from time to time); and

(b) Incur the "**Obligations**" hereunder and as defined in the DIP Financing Agreements (collectively, the "**DIP Obligations**");

(iii) Authorize the use of the proceeds of the DIP Facility (net of any amounts used to pay fees, costs, and expenses under the DIP Financing Agreements) in each case in a manner consistent with the terms and conditions of the DIP Financing Agreements, and in accordance with the Budget (as defined below) (subject to any variances permitted under the terms and conditions of the DIP Financing Agreements, or with the written consent of BOA): (a) to, upon entry of the

Interim Order, repay the Pre-Petition Liabilities in full owed by MMR Holdings to BOA; (b) to pay fees and expenses incurred in connection with the transactions contemplated hereby and by MMR Holdings' and the other Debtors Bankruptcy Cases; (c) for general corporate purposes; and (d) for payments permitted to be made under and in accordance with Borrowing Orders that are in a form acceptable to the DIP Lender and approved by the Bankruptcy Court;

(iv) Grant, pursuant to Sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the DIP Lender first priority priming, valid, perfected, and enforceable liens, subject only to the Carve-Out (as defined below) and the Permitted Prior Liens (as defined below), upon all of the Debtors' property and assets as provided in and as contemplated by this Interim Order, the DIP Facility, and the DIP Financing Agreements;

(v) Grant, pursuant to Section 364(c)(1) of the Bankruptcy Code, the DIP Lender superpriority administrative claim status in respect of all DIP Obligations, subject to the Carve-Out as provided herein;

(vi) Authorize the use of "cash collateral" as such term is defined in section 363 of the Bankruptcy Code (the "**Cash Collateral**"), in which the Pre-Petition Secured Parties (as defined below) have an interest;

(vii) (a) Grant BOA Post-Petition Replacement Liens and Post-Petition Superpriority Claims (each as defined below) to the extent of any Diminution in Value (as defined below) of BOA's interest in the Pre-Petition Collateral (as defined below) as adequate protection for subordination of the Pre-Petition Liens to the DIP Liens and the Carve-Out (both as defined below), the use and sale of Cash Collateral, and for the imposition of the automatic stay, and (b) make the Adequate Protection Payments;

(viii) Vacate and modify the automatic stay imposed by Section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Financing Agreements and this Interim Order;

(ix) Schedule a final hearing (the "**Final Hearing**") to consider entry of an order (the "**Final Order**") granting the relief requested in the DIP Motion on a final basis and approve the form of notice with respect to the Final Hearing; and

(x) Waive any applicable stay (including under Rule 6004 of the Federal Rules of Bankruptcy Procedure) and provide for immediate effectiveness of this Interim Order.

The Court having considered the Motion, the Burgess Declaration, the proposed DIP Facility, and the DIP Financing Agreements, and the evidence submitted at the hearing on this Interim Order (the "**Interim Hearing**"); and in accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d), and 9014, and the Local Rules of this Court, due and proper notice of the Motion and the Interim Hearing having been given; an Interim Hearing having been held and concluded on April 15, 2010; and it appearing that approval of the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors pending the Final Hearing and otherwise is fair and reasonable and in the best interests of the Debtors, their creditors, their estates, and their equity holders, and is essential for the continued operations of the Debtors' respective businesses; and it further appearing that the Debtors are unable to secure (i) unsecured credit for money borrowed allowable as an administrative expense under Bankruptcy Code Section 503(b)(1), (ii) credit for money borrowed with priority over any or all administrative expenses of the kind specified in Bankruptcy Code sections 503(b) or 507(b), (iii) credit for money borrowed secured solely by a Lien on property of the estate that is not otherwise subject to a Lien, or (iv) credit for money borrowed secured by a junior Lien on property of the estate which is subject to a

Lien; and there is adequate protection of the interests of holders of liens on the property of the estate on which liens are to be granted; and all objections, if any, to the entry of this Interim Order having been withdrawn, resolved, or overruled by this Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING BY THE DEBTORS, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A. **Petition Date.** On April 14, 2010 (the "**Petition Date**"), the Debtors filed their respective voluntary petitions under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Eastern District of Virginia (the "**Court**"). The Debtors have continued in the management and operation of their businesses and properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee, examiner, or creditors committee has been appointed and/or formed in these cases.

B. **Jurisdiction and Venue.** This Court has jurisdiction over this proceeding, pursuant to 28 U.S.C. §§ 157(b) and 1334, and over the persons and property affected hereby. Consideration of this Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for the Case and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

C. **Notice.** The Interim Hearing is being held pursuant to the authorization of Bankruptcy Rule 4001 and Local Rule 9013-1. Notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtors, whether by facsimile, electronic mail, overnight courier, or first class mail, postage pre-paid on April 14, 2010 to certain parties in interest, including: (i) the Office of the United States Trustee, (ii) the Debtors' twenty (20) largest unsecured creditors, (iii) counsel to Bank of America, N.A., the DIP Lender, and pre-petition lender, (iv) all secured creditors of record, (v) the Office of the United States Attorney for the

Eastern District of Virginia; (vi) the Securities and Exchange Commission; (vii) the Internal Revenue Service; and (viii) any known party claiming an interest in the Debtors' assets. Under the circumstances, such notice of the Interim Hearing and the relief requested in the Motion is due and sufficient notice and complies with Sections 102(1), 364(c), and 364(d) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(c), 4001(d), and the local rules of the Court.

D.      **Debtors' Acknowledgements and Agreement.** Without prejudice to the rights of parties in interest as set forth in paragraph 7 below, the Debtors (on behalf of themselves and their estates) admit, stipulate, acknowledge, and agree that (collectively, paragraphs D (i) through N (vi) hereof shall be referred to herein as the "**Debtors' Stipulations**"):

(i) **Pre-Petition Financing Agreements.** Prior to the commencement of the Case, BOA made a certain term loan to MMR Holdings pursuant to: (A) certain loan agreement (as amended, the "**Pre-Petition Agreement**"), dated May 22, 2006, and executed by and between MMR Holdings (on behalf of and for the benefit of all Debtors), and BOA; and (B) all other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to, or in favor of BOA (collectively, as amended, modified, or supplemented and in effect from time to time, the "**Pre-Petition Financing Agreements**");

(ii) **Pre-Petition Debt Amount**. As of the Petition Date, MMR Holdings was indebted under the Pre-Petition Financing Agreements in the approximate principal amount of $435,000, plus interest accruing at the rate set forth in the Pre-Petition Financing Agreements, costs, expenses, fees, and other charges (collectively the "**Pre-Petition Debt**").

(iii) **Pre-Petition Collateral**. To secure the Pre-Petition Debt, certain of the Debtors granted security interests and liens (the "**Pre-Petition Liens**") to BOA upon certain of the Debtors' property and assets, including accounts receivable (collectively, the "**Pre-Petition**

**Collateral**"), with priority over all other liens except any liens otherwise permitted by the Pre-Petition Agreement (to the extent any such permitted liens are valid, properly perfected, unavoidable, and senior to the Pre-Petition Liens, they are referred to herein as the "**Permitted Prior Liens**").

      **(iv) <u>Pre-Petition Liens</u>**. (a) As of the Petition Date, the Debtors believe that: (i) the Pre-Petition Liens are valid, binding, enforceable, and perfected first-priority liens, subject only to any Permitted Prior Liens and are not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (ii) the Pre-Petition Debt constitutes legal, valid, and binding obligations of the Debtors, enforceable in accordance with the terms of the Pre-Petition Financing Agreements (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), no offsets, defenses. or counterclaims to any of the Pre-Petition Debt exists, and no portion of the Pre-Petition Debt is subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (iii) the Pre-Petition Debt constitutes allowable secured claims; and (b) on the date that this Interim Order is entered, the Debtors have waived, discharged, and released BOA, together with its affiliates, agents, attorneys, officers, directors, and employees, of any right the Debtors may have to challenge or object to any of the Pre-Petition Debt, to challenge or object to the security for the Pre-Petition Debt, and to bring or pursue any and all claims, objections, challenges, causes of action, and/or choses in action arising out of, based upon or related to the Pre-Petition Financing Agreements or otherwise. The Debtors do not possess and will not assert any claim, counterclaim, setoff, or defense of any kind, nature, or description which would in any way affect the validity, enforceability, and non-avoidability of any of the Pre-Petition Agreements or the Pre-Petition Liens.

**(v) Cash Collateral.** BOA has a security interest in Cash Collateral, including all amounts on deposit in the Debtors' banking, checking, or other deposit accounts and all proceeds of Pre-Petition Collateral, to secure the Pre-Petition Debt and, respectively, to the same extent and order of priority as that which was held by such party pre-petition.

**(vi) Priming of DIP Facility.** In entering into the DIP Financing Agreements, and as consideration therefor, the Debtors hereby agree that until such time as all DIP Obligations are indefeasibly paid in full in cash and the DIP Financing Agreements are terminated in accordance with the terms thereof, the Debtors shall not in any way prime or seek to prime the security interests and DIP Liens provided to the DIP Lender under this Interim Order by offering a subsequent lender or a party-in-interest a superior or pari passu lien or claim pursuant to section 364(d) of the Bankruptcy Code or otherwise.

E. **Findings Regarding the Post-Petition Financing.**

(i) **Need for Post-Petition Financing.** An immediate need exists for the Debtors to obtain funds from the DIP Facility in order to continue operations and to administer and preserve the values of their estates. The ability of the Debtors to finance their operations, to preserve and maintain the values of their respective assets, and to maximize a return for all creditors requires the availability of working capital from the DIP Facility, the absence of which would immediately and irreparably harm the Debtors, their estates, their creditors, and their equity holders and the possibility for a successful reorganization or sale of the Debtors' assets as going concerns or otherwise.

(ii) **No Credit Available on More Favorable Terms**. The Debtors have been unable to obtain: (A) unsecured credit allowable under Bankruptcy Code Section 503(b)(1) as an administrative expense; (B) credit for money borrowed with priority over any or all administrative expenses of the kind specified in Bankruptcy Code Sections 503(b) or 507(b); (C) credit for money borrowed secured solely by a Lien on property of the estate that is not otherwise subject to a Lien; or (D) credit for money borrowed secured by a junior Lien on property of the estate which is subject to a Lien, in each case, on more favorable terms and conditions than those provided in the DIP Financing Agreements, the DIP Facility, and this Interim Order. The Debtors are unable to obtain credit for borrowed money without granting to the DIP Lenders the DIP Protections (as defined below).

(iii) **Prior Liens**. Nothing herein shall constitute a finding or ruling by this Court that any Permitted Prior Liens are valid, senior, perfected, and unavoidable. Nothing shall prejudice (A) the rights of any party in interest including, but not limited to, the Debtors, the DIP Lender, and any Committee to challenge the validity, priority, perfection, and extent of any such Permitted Prior Lien and or security interest, or (B) the rights of any Committee to challenge the validity, priority, perfection, and extent of the Pre-Petition Liens as set forth in this Interim Order.

F. **Section 506(c) Waiver.** As a further condition of the DIP Facility and any obligation of the DIP Lender to make credit extensions pursuant to the DIP Financing Agreements, the Debtors shall be deemed to have waived any rights or benefits of Section 506(c) of the Bankruptcy Code with respect to the DIP Lender. In consideration for the use of Cash Collateral by the Debtors and the priming of the Pre-Petition Liens, upon entry of the Final Order, the Debtors shall be deemed to have waived any rights or benefits of Section 506(c) of the Bankruptcy Code with respect to BOA.

G. **Use of Proceeds of the DIP Facility.** Proceeds of the DIP Facility (net of any amounts used to pay fees, costs, and expenses under the DIP Financing Agreements) shall be used, in each case in a manner consistent with the terms and conditions of the DIP Financing Agreements, and in accordance with the Budget (as defined below) (subject to any variances permitted under the terms and conditions of the DIP Financing Agreements, or with the written consent of BOA), solely (a) to, upon entry of the Interim Order, repay the Pre-Petition Liabilities in full owed by MMR Holdings to BOA; (b) to pay fees and expenses incurred in connection with the transactions contemplated hereby and incurred in connection with MMR Holdings' and the other Debtors Bankruptcy Cases; (c) for general corporate purposes; and (d) for payments permitted to be made under and in accordance with Borrowing Orders that are in a form acceptable to the DIP Lender and approved by the Bankruptcy Court.

H. **Payment of Pre-Petition Debt and Application of Proceeds of DIP Collateral.**

Payment of the Pre-Petition Debt in accordance with this Interim Order is necessary as BOA will not otherwise consent to the priming of the Pre-Petition Liens. Such payment will not prejudice the Debtors or their estate because the Pre-Petition Secured Parties are oversecured and payment of such amounts is subject to the rights of parties-in-interest under paragraph 7 below. All proceeds of the sale or other disposition of the DIP Collateral (as defined below) shall be applied to reduce the DIP Obligations in accordance with the terms and conditions of the DIP Financing Agreements.

I. **Adequate Protection for BOA, as the Pre-Petition Secured Party.** As a result of the grant of the DIP Liens (as defined below), subordination to the Carve-Out (as defined below),

and the use of Cash Collateral authorized herein, BOA is entitled to receive adequate protection pursuant to Sections 361, 362, 363, and 364 of the Bankruptcy Code for any decrease in the value of its interest in the Pre-Petition Collateral (including Cash Collateral) resulting from the automatic stay or the Debtors' use, sale, or lease of the Pre-Petition Collateral (including Cash Collateral) during the bankruptcy proceedings. As adequate protection, BOA will receive: (1) the Post-Petition Replacement Liens; and (2) the Post-Petition Superpriority Claim.

J. **Section 552.** BOA, as the DIP Lender and the Pre-Petition Secured Party, is entitled to the rights and benefits of Section 552(b) of the Bankruptcy Code, and the "equities of the case" exception shall not apply.

K. **Extension of Financing.** The DIP Lender is willing to provide financing to the Debtors in accordance with the DIP Financing Agreements and subject to: (i) the entry of this Interim Order and the Final Order; and (ii) findings by this Court that such financing is essential to the Debtors' estates, that the DIP Lender is a good faith financier, and that the DIP Lender's claims, superpriority claims, security interests, and liens and other protections granted pursuant to this Interim Order (and the Final Order) and the DIP Facility will not be affected by any subsequent reversal, modification, vacatur, or amendment of this Interim Order or the Final Order or any other order, as provided in Section 364(e) of the Bankruptcy Code.

L. **Business Judgment and Good Faith Pursuant to Section 364(e).** The terms and conditions of the DIP Facility and the DIP Financing Agreements, and the fees paid and to be paid thereunder, are: (i) fair, reasonable, and the best available under the circumstances; (ii) reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties; and (iii) are supported by reasonably equivalent value and consideration. The DIP Facility was negotiated in good faith and at arms' length between the Debtors and the DIP Lender. Use of the proceeds to be

extended under the DIP Facility will be so extended in good faith, and for valid business purposes and uses, as a consequence of which the DIP Lender is entitled to the protection and benefits of Section 364(e) of the Bankruptcy Code.

M. **Relief Essential; Best Interest.** The relief requested in the Motion (and as provided in this Interim Order) is necessary, essential, and appropriate for the continued operation of the Debtors' businesses and the management and preservation of the Debtors' respective assets and property. It is in the best interests of the Debtors' estates to establish the DIP Facility contemplated by the DIP Financing Agreements.

N. **Entry of Interim Order.** For the reasons stated above, the Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).

**NOW, THEREFORE**, on the Motion of the Debtors and the record before this Court with respect to the Motion, with the consent of the Debtors and BOA, as the Pre-Petition Secured Party and the DIP Lender to the form and entry of this Interim Order, and good and sufficient cause appearing therefor,

**IT IS ORDERED** that:

1. **Motion Granted.** The Motion is granted in its entirety in accordance with the terms and conditions set forth in this Interim Order and the DIP Financing Agreements.

2. **DIP Financing Agreements.**

(a) **Approval of Entry Into DIP Financing Agreements**. The Debtors are expressly and immediately authorized, empowered, and directed to execute and deliver the DIP Financing Agreements, and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Interim Order and the DIP Financing Agreements, and to execute and deliver all instruments, certificates, agreements, and documents which may be required or

necessary for the performance by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens described in and provided for by this Interim Order and the DIP Financing Agreements. The Debtors are hereby authorized and directed to do and perform all acts, pay the principal, interest, fees, expenses, and other amounts described in the DIP Financing Agreements as such become due, including, without limitation, commitment fees and reasonable attorneys' fees, as provided for in the DIP Financing Agreements which amounts shall not otherwise be subject to approval of this Court. Upon execution and delivery, the DIP Financing Agreements shall represent valid and binding obligations of the Debtors enforceable against the Debtors in accordance with their terms.

(b) **Authorization to Borrow.** In order to enable the Debtors to continue to operate their businesses during the Interim Period and subject to the terms and conditions of this Interim Order, the DIP Financing Agreements and the Budget (as defined below) (subject to any variances permitted under the terms and conditions of the DIP Financing Agreements, or with the written consent of BOA), the Debtors are hereby authorized under the DIP Facility to borrow up to a total committed amount of $400,000, composed of a senior revolving credit facility in accordance with the terms and conditions of the DIP Financing Agreements.

(c) **Application of DIP Proceeds.** The proceeds of the DIP Facility (net of any amounts used to pay fees, costs, and expenses under the DIP Financing Agreements) shall be used, in each case in a manner consistent with the terms and conditions of the DIP Financing Agreements, and in accordance with the Budget (as defined below) (subject to any variances permitted under the terms and conditions of the DIP Financing Agreements, or with the written consent of BOA), solely (a) to, upon entry of the Interim Order, repay the Pre-Petition Liabilities in full owed by MMR Holdings to BOA; (b) to pay fees and expenses incurred in connection with

the transactions contemplated hereby and incurred in MMR Holdings' and the other Debtors Bankruptcy Cases,; (c) for general corporate purposes; and (d) for payments permitted to be made under and in accordance with Borrowing Orders that are in a form acceptable to the DIP Lender and approved by the Bankruptcy Court.

(d) **Conditions Precedent.** The DIP Lender shall have no obligation to make any loan or advance under the DIP Financing Agreements during the Interim Period unless the conditions precedent to make such loan under the DIP Financing Agreements have been satisfied in full or waived in accordance with the DIP Financing Agreements.

(e) **Post-Petition Liens.** Effective immediately upon the entry of this Interim Order, the DIP Lender is hereby granted pursuant to Sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, priming first priority, continuing, valid, binding, enforceable, non-avoidable, and automatically perfected post-petition security interests and liens (collectively, the "**DIP Liens**"), senior and superior in priority to all other secured and unsecured creditors of the Debtors' estates except as otherwise provided in this Interim Order and the Final Order, upon and to all presently owned and hereafter acquired collateral as such terms are defined in the DIP Financing Agreements (collectively, the "**DIP Collateral**" and, together with the Pre-Petition Collateral, the "**Collateral**").

(f) **DIP Lien Priority.** The DIP Liens to be created and granted to the DIP Lender, as provided herein: (a) are created pursuant to Sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code; (b) are first, valid, prior, perfected, unavoidable, and superior to any security, mortgage, or collateral interest or lien or claim to any of the DIP Collateral; and (c) are subject only to the Carve-Out (as defined below), and the Permitted Prior Liens.

The DIP Liens shall secure all DIP Obligations. The DIP Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in the Case; and shall be valid and enforceable against any trustee appointed in the Case, upon the conversion of the Case to a case under chapter 7 of the Bankruptcy Code or in any other proceedings related to the foregoing (any "**Successor Case**"), and/or upon the dismissal of the Case. The DIP Liens shall not be subject to sections 506(c), 510, 549, 550, or 551 of the Bankruptcy Code or the "equities of the case" exception of Section 552 of the Bankruptcy Code.

(g) **Enforceable Obligations.** The DIP Financing Agreements shall constitute and evidence the valid and binding obligations of the Debtors, which obligations shall be enforceable against the Debtors, their estates, and their creditors, in accordance with the terms and conditions of the DIP Financing Agreements.

(h) **Protection of DIP Lender and Other Rights.** The DIP Lender shall have no obligation to make any extension of credit pursuant to the DIP Financing Agreements unless all of the conditions precedent to the making of such extension of credit under the DIP Financing Agreement are satisfied or waived by the DIP Lender in its sole discretion. From and after the Petition Date, the Debtors shall use the proceeds of the extensions of credit under the DIP Facility only for the purposes specifically set forth in the DIP Financing Agreements and this Interim Order and in compliance with the Budget (subject to any variances permitted under the terms and conditions of the DIP Financing Agreements, or with the written consent of BOA).

(i) **Superpriority Administrative Claim Status.** Subject to the Carve-Out (as defined below), all DIP Obligations shall be an allowed superpriority administrative expense claim (the "**DIP Superpriority Claim**" and, together with the DIP Liens, the "**DIP Protections**") with priority under sections 364(c)(1), 503(b), and 507(b) of the Bankruptcy Code and otherwise over

all administrative expense claims and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in, arising, or ordered pursuant to any other section of the Bankruptcy Code. Other than the Carve-Out (as defined below), no costs or expenses of administration, including, without limitation, professional fees allowed and payable under Bankruptcy Code Sections 328, 330, and 331, or otherwise, that have been or may be incurred in this proceeding, or in any Successor Case, and no priority claims are, or will be, senior to, prior to, or on a parity with the DIP Protections or the DIP Obligations, or with any other claims of the DIP Lender arising hereunder.

3.    **Authorization to Use Cash Collateral and Proceeds of DIP Facility.**

(a) Pursuant to the terms and conditions of this Interim Order, the DIP Facility, and the DIP Financing Agreements, and in accordance with the Budget (as the same may be modified, supplemented, or updated from time to time consistent with the terms of the DIP Credit Agreement, the "**Budget**"),[3] filed on record in these bankruptcy proceedings and introduced into evidence at the Interim Hearing, the Debtors are authorized to use Cash Collateral and to use the advances under the DIP Financing Agreements (during the period commencing immediately after the entry of the Interim Order (or after the Petition Date for use of Cash Collateral) and terminating upon the earlier to occur of (i) a DIP Order Event of Default (as defined below), or (ii) the Commitment Termination Date (as defined below). Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business or other proceeds resulting therefrom, except as permitted in the DIP Facility and the DIP

---

[3] The Budget is attached herein as **Exhibit A**.

Financing Agreements and in accordance with the Budget (subject to any variances permitted under the terms and conditions of the DIP Financing Agreements, or with the written consent of BOA).

(b) No Cash Collateral or advances under the DIP Financing Agreements may be used by the Debtors, any Committee, or any other person or entity to object to or contest in any manner, or raise any defenses to the validity, extent, perfection, priority, or enforceability of the Pre-Petition Debt, the DIP Obligations, or any liens or security interests with respect thereto or any other rights or interests of BOA, as the Pre-Petition Secured Party and as DIP Lender, or to assert any claims or causes of action, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code, against BOA.

(c) Subject to the terms and conditions set forth herein and the Budget, i) the Debtors shall be authorized to use any Cash Collateral held in any pre-petition bank account maintained by any of the Debtors and ii) any bank, including, without limitation BOA, maintaining a bank account in the name of any of the Debtors is authorized to release any funds for use by the Debtors that were held in such bank account(s) that were subject to any pre-petition garnishment notice, attachment, or other non-bankruptcy judicial proceeding seeking to require such bank(s) to suspend the Debtors' use of such funds held in the account(s) or to turnover such funds.

4.    **Payment of Pre-Petition Debt and Adequate Protection.**

(a) Promptly following the entry of this Interim Order, BOA shall provide the Debtors with a payoff letter, which sets forth the "pay off amount" as of the date of such payoff letter (and which may be updated by BOA at any time prior to the initiation of the funding of the payoff amount as provided in such payoff letter). At such time as the conditions precedent to the

DIP Financing Agreements have been satisfied, the Debtors shall utilize the proceeds of the first borrowing under the DIP Financing Agreements and/or Cash Collateral to retire the Debtors' obligations to BOA, as the Pre-Petition Secured Party, and accrued interest, costs and expenses, including attorney's fees, pursuant to the terms of the Pre-Petition Agreement. Also, so long as no Event of Default has occurred and is continuing, interest that would otherwise be assessed at the Default Rate (as defined and in accordance with the Pre-Petition Agreement) shall be excluded from the Pre-Petition Liabilities.

(b) As adequate protection for the interest of BOA, as the Pre-Petition Secured Party, in the Pre-Petition Collateral (including Cash Collateral) on account of the granting of the DIP Liens, subordination to the Carve-Out (as defined below), the Debtors' use of Cash Collateral, and other decline in value arising out of the automatic stay or the Debtors' use, sale, depreciation, or disposition of the Pre-Petition Collateral ("**Diminution in Value**"), BOA shall receive adequate protection as follows:

(i) **Post-Petition Replacement Liens.** Solely to the extent of the Diminution in Value of the interests of BOA in the Pre-Petition Collateral, BOA shall have, subject to the terms and conditions set forth below, pursuant to Sections 361, 363(e), and 364(c) of the Bankruptcy Code additional and replacement security interests and liens in the DIP Collateral (the "**Post-Petition Replacement Liens**"), which shall be junior only to the DIP Liens and the Carve-Out as provided herein.

(ii) **Post-Petition Superpriority Claim.** Solely to the extent of the Diminution in Value of the interests of BOA in the Pre-Petition Collateral, BOA shall have an allowed superpriority administrative expense claim (the "**Post-**

**Petition Superpriority Claim**") which shall have priority (except with respect to (a) the DIP Protections, and (b) the Carve-Out (as defined below)), in the Case under Sections 364(c)(1), 503(b), and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to any other section of the Bankruptcy Code. Other than the DIP Protections, and the Carve-Out (as defined below), no costs or expenses of administration, including, without limitation, professional fees allowed and payable under Bankruptcy Code Sections 328, 330, and 331, or otherwise, that have been or may be incurred in this proceeding, or in any Successor Case, and no priority claims are, or will be, senior to, prior to or on a parity with the Pre-Petition Superpriority Claim.

        (iii) **Adequate Protection Payments.** BOA shall receive adequate protection in the form of (i) repayment of the outstanding amount of the Pre-Petition Debt (including principal, interest, fees, costs and expenses) upon entry of this Interim Order, and (ii) payments of amounts provided for in this Interim Order and the DIP Financing Agreements (collectively, the "**Adequate Protection Payments**").

5.    **Post-Petition Lien Perfection.** This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens and the Post-Petition Replacement Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law

of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement or securities account control agreement) to validate or perfect the DIP Liens and the Post-Petition Replacement Liens or to entitle the DIP Liens and the Post-Petition Replacement Liens to the priorities granted herein. Notwithstanding the foregoing, BOA may, in its discretion, file such financing statements, mortgages, security agreements, notices of liens, and other similar documents, and are hereby granted relief from the automatic stay of Section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, security agreements, notices, and other agreements or documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the bankruptcy proceedings. The Debtors shall execute and deliver to BOA all such financing statements, mortgages, notices, and other documents as BOA may reasonably request to evidence, confirm, validate, or perfect, or to insure the contemplated priority of, the DIP Liens and the Post-Petition Replacement Liens granted pursuant hereto.

6.      **Reservation of Certain Third Party Rights and Bar of Challenges and Claims.** Nothing in this Interim Order or the DIP Financing Agreements shall prejudice whatever rights any Committee or any other party in interest with requisite standing (other than the Debtors) may have to:

(a) Object to or challenge the findings herein, including, but not limited to, those in relation to: (i) the validity, extent, perfection, or priority of the security interests and liens of BOA in and to the Pre-Petition Collateral, or (ii) the validity, allowability, priority, status, or amount of the Pre-Petition Debt; or

(b) Bring suit against BOA in connection with or related to the Pre-Petition Debt, or the actions or inactions of BOA arising out of or related to the Pre-Petition Debt. Any Committee

or any other party in interest with requisite standing must commence a contested matter or adversary proceeding raising such objection or challenge (including, without limitation, any claim against BOA in the nature of a setoff, counterclaim or defense to the Pre-Petition Debt, and including claims arising under sections 506, 544, 547, 548, 549, 550, and/or 552 of the Bankruptcy Code), by the later of:

(i) 60 days following the appointment of the Committee, if any; or

(ii) if no Committee is appointed, 75 days following entry of the Interim Order (collectively referred to as the "**Challenge Period**," and the date that is the next calendar day after the termination of the Challenge Period, in the event that no objection or challenge is raised during the Challenge Period, shall be referred to as the "**Challenge Period Termination Date**").

(iii) Upon the Challenge Period Termination Date, any and all such challenges and objections by any party (including, without limitation, any Committee, any Chapter 11 or Chapter 7 trustee appointed herein or in any Successor Case, and any other party in interest): (a) shall be deemed to be forever waived and barred; (b) the Pre-Petition Debt shall be deemed to be allowed in full and shall be deemed to be allowed as a fully secured claim within the meaning of Section 506 of the Bankruptcy Code; and (c) the payment of the Pre-Petition Debt in accordance with this Interim Order shall not be subject to disgorgement.

7. **Carve-Out.** Subject to the terms and conditions contained in this paragraph 7, the DIP Protections, the Pre-Petition Liens, the Post-Petition Replacement Liens, and the Post-Petition Superpriority Claims are subordinate only to Professional Fees and Expenses incurred by the Debtors' legal counsel not to exceed the sum of $25,000 per month (the "**Carve-Out Amounts**"),

with such Carve-Out Amounts becoming available after the Petition Date. Such fees and expenses incurred by the Debtors' legal counsel and other professionals and which may be paid using the Carve-Out Amounts must be approved by the Bankruptcy Court, or such lesser amount as so approved, and in an aggregate amount not to exceed $100,000 (cumulatively, the "**Carve-Out**").

The Carve-Out shall exclude any fees and expenses incurred in connection with the assertion or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defenses, or other contested matter, the purpose of which is to seek any order, judgment, determination, or similar relief invalidating, setting aside, avoiding, or subordinating, in whole or in part, (i) the DIP Obligations, (ii) the Pre-Petition Debt, (iii) the Pre-Petition Liens in the Pre-Petition Collateral, or (iv) the DIP Lender's Liens in the DIP Collateral, or preventing, hindering or delaying, whether directly or indirectly, the DIP Lender's or Pre-Petition Secured Party's assertions.

However, the exclusion of such fees and expenses from the Carve-Out does not encompass any investigative work conducted by attorneys and financial advisors employed by the Debtors and any Committee pursuant to Sections 327 and 1103 of the Bankruptcy Code prior to bringing any action relating to the foregoing to the extent such fees and expenses do not exceed $10,000.

So long as BOA has not provided notice of the occurrence and continuance of an Event of Default under the DIP Financing Agreements, the Debtors shall be permitted to pay compensation and reimbursement of expenses allowed and payable under Sections 330 and 331 of the Bankruptcy Code and in accordance with the Budget (subject to any variances permitted under the terms and conditions of the DIP Financing Agreements, or with the written consent of BOA), as the same may become due and payable and such payments. The payment of the Carve-Out shall not reduce the amount of the DIP Obligations or the Pre-Petition Debt.

8.      **Section 506(c) Claims.** No costs or expenses of administration which have been or may be incurred in these bankruptcy proceedings at any time shall be charged against BOA, as the DIP Lender, its claims, or the DIP Collateral, pursuant to Sections 105 and 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of BOA, and no such consent shall be implied from any other action, inaction, or acquiescence by BOA. Subject to the entry of a Final Order, no costs or expenses of administration which have been or may be incurred in the bankruptcy proceedings at any time shall be charged against BOA, in its capacity as the Pre-Petition Secured Party, its claims, or the Pre-Petition Collateral, pursuant to Sections 105 and 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of BOA, and no such consent shall be implied from any other action, inaction, or acquiescence by BOA.

9.      **Commitment Termination Date.** All (i) DIP Obligations shall be immediately due and payable, and (ii) authority to use the proceeds of the DIP Financing Agreements and to use Cash Collateral shall cease, both on the date that is the earliest to occur of: (a) the Maturity Date under the DIP Financing Agreements, *i.e.*, December 31, 2010, or (b) the date on which the maturity of the Obligations is accelerated and the Commitments are irrevocably terminated in accordance with the DIP Financing Agreements (the "**Commitment Termination Date**").

10.     **Payment from Proceeds of Collateral.** Until the DIP Obligations have been indefeasibly paid in full in cash, all products and proceeds of the DIP Collateral shall be remitted directly to BOA and applied to the DIP Obligations outstanding, in each case, as and to the extent set forth in the DIP Financing Agreements.

11.     **Events of Default.** The occurrence of the Commitment Termination Date and all events of default described in the DIP Facility Agreements constitute events of default in this Interim Order (the "**DIP Order Event of Default**"). BOA shall provide written notice of any DIP

Order Event of Default to (i) the Debtors, (ii) counsel to the Debtors, (iii) counsel to the Committee, if any, and (iv) the U.S. Trustee.

Unless and until the DIP Obligations are irrevocably repaid in full in cash (or other arrangements for payment of the DIP Obligations satisfactory to the DIP Lender have been made), all commitments to lend have irrevocably terminated, and all DIP Obligations which survive termination obligations have been cash collateralized to the reasonable satisfaction of BOA, the protections afforded to BOA, in its capacity as the DIP Lender and/or the Pre-Petition Secured Party pursuant to this Interim Order and under the DIP Financing Agreements, and any actions taken pursuant thereto, shall survive the entry of any order confirming a Plan or converting these bankruptcy cases into a Successor Case, and the DIP Protections, the Post-Petition Replacement Liens and the Post-Petition Superpriority Claim shall continue in this proceeding and in any Successor Case, and such DIP Protections, Post-Petition Replacement Liens, and the Post-Petition Superpriority Claim shall maintain their respective priority as provided by this Interim Order.

12. **Rights and Remedies Upon DIP Order Event of Default.**

(a) Any automatic stay otherwise applicable to BOA is hereby modified so that upon seven (7) business days notice of the occurrence of any DIP Order Event of Default provided to (i) the Debtors, (ii) counsel to the Debtors, (iii) counsel to the Committee, if any, and (iv) the U.S. Trustee, BOA shall be entitled to exercise its rights and remedies in accordance with the DIP Financing Agreements.

(b) Immediately following the giving of notice by BOA of the occurrence of a DIP Order Event of Default: (i) the Debtors shall continue to deliver and cause the delivery of the proceeds of DIP Collateral to BOA as provided in the DIP Financing Agreements and this Interim Order; (ii) BOA shall continue to apply such proceeds in accordance with the provisions of this

Interim Order and of the DIP Financing Agreements; (iii) the Debtors shall have no right to use any of such proceeds, nor any other Cash Collateral, other than towards the satisfaction of the Pre-Petition Debt and DIP Obligations; and (iv) any obligation otherwise imposed on BOA to provide any loan or advance to the Debtors pursuant to the DIP Facility shall be suspended.

(c) Following the occurrence of a DIP Order Event of Default, the Debtors and any Committee appointed in these cases shall be entitled to an emergency hearing before this Court solely for the purpose of contesting whether a DIP Order Event of Default has occurred. The automatic stay shall automatically terminate at the end of such notice period if: (i) the Debtors or any such Committee does not timely contest the right of BOA to exercise its remedies based upon whether a DIP Order Event of Default has occurred within such time period; or (ii) the Debtors or any such Committee does timely contest the occurrence of a DIP Order Event of Default and the Court after notice and hearing declines to stay the enforcement thereof.

(d) Subject to the provisions of paragraph 17, upon the occurrence of a DIP Order Event of Default, BOA is authorized to exercise its remedies and proceed under or pursuant to the DIP Financing Agreements. All proceeds realized from any of the foregoing shall be turned over to BOA for application to the Carve-Out, the DIP Obligations, and the Pre-Petition Debt under, and in accordance with the provisions of, the DIP Financing Agreements, the Pre-Petition Agreements, and this Interim Order.

13. **Other Rights and Obligations.**

(a) **Good Faith Under Section 364(e) of the Bankruptcy Code. No Modification or Stay of this Interim Order**. Based on the findings set forth in this Interim Order and in accordance with Section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility

contemplated by this Interim Order, in the event any or all of the provisions of this Interim Order are hereafter modified, amended, or vacated by a subsequent order of this or any other Court, the DIP Lender is entitled to the protections provided in Section 364(e) of the Bankruptcy Code, and no such appeal, modification, amendment, or vacation shall affect the validity and enforceability of any advances made hereunder or the liens or priority authorized or created hereby. Notwithstanding any such modification, amendment, or vacation, any claim granted to the DIP Lender hereunder arising prior to the effective date of such modification, amendment, or vacation of any DIP Protections granted to the DIP Lender shall be governed in all respects by the original provisions of this Interim Order, and the DIP Lender shall be entitled to all of the rights, remedies, privileges, and benefits, including the DIP Protections granted herein, with respect to any such claim. Since the loans made pursuant to the DIP Financing Agreements are made in reliance on this Interim Order, the obligations owed the DIP Lender prior to the effective date of any stay, modification, or vacation of this Interim Order shall not, as a result of any subsequent order in these cases, or in any Successor Case, be subordinated, lose its lien priority or superpriority administrative expense claim status, or be deprived of the benefit of the status of the liens and claims granted to the DIP Lender under this Interim Order and/or the DIP Financing Agreements.

(b) **Binding Effect**. The provisions of this Interim Order shall be binding upon and inure to the benefit of BOA, the Debtors, and the parties' respective successors and assigns whether in these bankruptcy cases, in any Successor Case, or upon dismissal of any such Chapter 11 or Chapter 7 Case.

(c) **Section 552(b).** BOA shall be entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code and the "equities of the case" exception under section

552(b) of the Bankruptcy Code shall not apply to BOA with respect to proceeds, product, offspring, or profits of any of the Pre-Petition Collateral or the DIP Collateral.

(d) **Amendment.** The Debtors and BOA may amend, modify, or supplement or waive any provision of the DIP Financing Agreements, provided that such amendment, modification, supplement or waiver, in the judgment of the Debtors and BOA, is either nonprejudicial to the rights of third parties or is not material. Except as otherwise provided herein, no waiver, modification, or amendment of any of the provisions hereof shall be effective unless set forth in writing, signed by on behalf of the Debtors and BOA (after having obtained the approval of BOA as provided in the DIP Financing Agreements) and approved by the Court.

(e) **Survival of Interim Order.** The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (i) confirming any Plan in these cases, (ii) converting these cases to cases under Chapter 7 of the Bankruptcy Code, (iii) dismissing these cases, (iv) withdrawing of the reference of these cases from this Court, or (v) providing for abstention from handling or retaining of jurisdiction of this Case in this Court. The terms and provisions of this Interim Order including the DIP Protections granted pursuant to this Interim Order and the DIP Financing Agreements and any other protections granted to BOA, shall continue in full force and effect notwithstanding the entry of such order, and such protections shall maintain their priority as provided by this Interim Order until all the obligations of the Debtors to BOA pursuant to the DIP Financing Agreements, have been indefeasibly paid in full and discharged (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms).

(f) **Inconsistency.** In the event of any inconsistency between the terms and conditions of the DIP Financing Agreements and of this Interim Order, the provisions of this Interim Order shall govern and control.

(g) **Enforceability.** This Interim Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.

(h) **Objections Overruled.** All objections to the Motion to the extent not withdrawn or resolved, are hereby overruled.

(i) **Waiver of any Applicable Stay.** Any applicable stay (including, without limitation, under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Interim Order.

14. **Final Hearing.**

(a) The Final Hearing to consider entry of the Final Order and final approval of the DIP Facility is scheduled for **May 19, 2010, at 10:00 a.m.,** at the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division. If no objections to the relief sought in the Final Hearing are filed and served in accordance with this Interim Order, the Court may decide not to hold a Final Hearing, and a separate Final Order may be presented by the Debtors and entered by this Court.

(b) On or before **April 23, 2010,** the Debtors shall serve, by United States mail, first-class postage prepaid, electronic mail, facsimile, overnight delivery, and/or courier, notice of the entry of this Interim Order and of the Final Hearing (the "**Final Hearing Notice**"), together with copies of this Interim Order, the proposed Final Order and the Motion, on: (i) the parties having been given notice of the Interim Hearing; (ii) any party which has filed prior to such date a

request for notices with this Court; (iii) the Committee, if any; (iv) counsel for any Committee, if any; and (v) any party which has filed prior to such date a request for notices with this Court. The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Court no later than May 12, 2010, which objections shall be served so that the same are received on or before such date by: (i) proposed counsel for the Debtors, Hirschler Fleischer, P.C., Attn: Robert S. Westermann, Esq., The Edgeworth Building, 2100 East Cary Street, Richmond, VA 23223, P.O. Box 500, Richmond, VA 23218-0500, facsimile no.: (804) 644-0957, e-mail: rwestermann@hf-law.com; (ii) counsel for BOA (as the DIP Lender and Pre-Petition Secured Party), McGuireWoods, LLP, Attn: Robert A. Cox, Jr., Esq., 201 North Tryon Street Charlotte, North Carolina 28202, facsimile no.: (704) 353-6197, e-mail: rcox@mcguirewoods.com; (iii) counsel to any Committee; and (iv) the Office of the U.S. Trustee, Attn: Robert B. Van Arsdale, Esq., 701 East Broad Street, Suite 4304, Richmond, VA 23219, facsimile no.: (804) 771-2330, e-mail: Robert.B.Van.Arsdale@usdoj.gov. Any objection shall be filed with the Clerk of the United States Bankruptcy Court for the Eastern District of Virginia, in each case to allow actual receipt of the foregoing no later than **May 12, 2010, at 4:00 p.m.** prevailing Eastern Time. In the event this Court modifies any of the provisions of this Interim Order or the DIP Financing Agreements following such further hearing, such modifications shall not affect the rights and priorities of BOA pursuant to this Interim Order with respect to the Collateral, and any portion of the DIP Obligations which arises or is incurred, advanced, or paid prior to such modifications (or otherwise arising prior to such modifications), and this Interim Order shall remain in full force and effect except as specifically amended or modified at such Final Hearing.

15. **Retention of Jurisdiction.** The Bankruptcy Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

Dated: _____
Richmond, Virginia

_____
United States Bankruptcy Judge

Entered on Docket: _____

I ask for this:

  /s/    Robert S. Westermann  _____
Robert S. Westermann (VSB No. 43294)
Sheila deLa Cruz (VSB No. 65395)
Hirschler Fleischer, P.C.
The Edgeworth Building
2100 East Cary Street
Richmond, Virginia 23223
P.O. Box 500
Richmond, Virginia 23218-0500
Phone: (804) 771-9500
Facsimile: (804) 644-0957

*Proposed Counsel for the Debtors*

Seen and Agreed:

   /s/    Robert A. Cox, Jr._____ (signature authorized)
Robert A. Cox, Jr., Esq.
McGuire Woods, LLP
201 North Tryon Street
Charlotte, North Carolina 28202
Phone: (704) 373-4637
Facsimile: (704) 353-6197

*Counsel for Bank of America, N.A.*

Seen and Agreed:

___/s/___Robert B. Van Arsdale_____ (signature authorized)
Robert B. Van Arsdale (VSB No. 17483)
Office of the United States Trustee
701 East Broad Street
Suite 4304
Richmond, Virginia 23219
Telephone:  (804) 771-2310
Telecopier:  (804) 771-2330

*Assistant U.S. Trustee*

## CERTIFICATE OF ENDORSEMENT

I hereby certify, under Local Rule 9022-1, that the foregoing proposed Order has been

endorsed by and/or served upon all necessary parties.

_____/s/ Robert S. Westermann_____

**MMR Holdings Inc.**

**Projected 30-Day Operating Budget**

**Net Collections**      $747,000

**Expenses**

| | |
|---|---|
| Accounting Fees | $5,000 |
| Ad/Promo | $11,000 |
| Administration Fees | $5,000 |
| Billing Fee | $30,000 |
| Contract Labor | $5,000 |
| Rent-Medical Equipment | $1,000 |
| Insurance | $11,000 |
| Janitorial & Cleaning | $2,000 |
| Laundry | $3,000 |
| Legal Fees | $20,000 |
| Med Supplies | $14,000 |
| Miscellaneous Expense | $2,000 |
| Office Expense | $26,000 |
| Outside Services | $8,000 |
| Parking/Transportation Patients | $2,000 |
| Payroll Expense | $330,000 |
| Radiologists Fees | $111,000 |
| Rent -Office Space | $54,000 |
| Repair and Maintenance | $23,000 |
| Taxes/Licenses | $6,000 |
| Transcription Costs | $3,000 |
| Travel | $5,000 |
| Utilities | $5,000 |
| Bank of America | $20,000 |

Total Projected Expenses      $702,000

Projected Cash Flow from
Operations      $45,000

Payment of accounts past due as a
result of garnishment      $180,000

Net Cash Flow      -$135,000