Robert B. Hill (VSB No. 18751)
Hill and Rainey Attorneys
2425 Boulevard, Suite 9
Colonial Heights, Virginia 23834
Telephone: (804)526-8300
Facsimile: (804)526-2872
E-mail: bhill@hillrainey.com

-and-

Randall F. Scherck
LATHROP & GAGE LLP
7701 Forsyth Boulevard, Suite 400
Clayton, Missouri 63105
Telephone: (314)613-2800
Facsimile: (314)613-2801
E-mail: rscherck@lathropgage.com

*Attorneys For Hitachi Capital America Corp.*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| In re: | ) |
| | ) Case No. 10-32658-DOT |
| MMR HOLDINGS, INC., <u>et al.</u>,[1] | ) |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) Chapter 11 |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| Hitachi Capital America Corp., a Delaware | ) |
| corporation, | ) |
| | ) |
| Movant, | ) |
| | ) |
| v. | ) |
| | ) |
| MMR Holdings, Inc.; OpenSided MRI of | ) |
| Cleveland, L.L.C.; OpenSided MRI of Denver, | ) |
| L.L.C.; OpenSided MRI of Kansas, L.L.C.; | ) |

---

[1] The fourteen (14) Debtors in the cases are MMR Holdings, Inc., and its subsidiaries, *i.e.*, OpenSided MRI of Atlanta, LLC, OpenSided MRI of Cleveland, LLC, OpenSided MRI of Cincinnati, LLC, OpenSided MRI of Denver, LLC, OpenSided MRI of Indianapolis, LLC, OpenSided MRI of Kansas, LLC, OpenSided MRI of Las Vegas, LLC, OpenSided MRI of Louisville, LLC, OpenSided MIR of Oklahoma City, LLC, OpenSided MRI of Orange County, LLC, OpenSided MRI of San Antonio, LLC, OpenSided MRI of New Orleans, LLC, and OpenSided Management, LLC.

OpenSided MRI of Las Vegas, L.L.C.;    )
OpenSided MRI of Louisville, L.L.C.;    )
OpenSided MRI of Oklahoma City, L.L.C.; and )
OpenSided MRI of San Antonio, L.L.C.;    )
        )
        Respondents.    )

### HITACHI CAPITAL AMERICA CORP.'S
### OBJECTION TO THE FINAL APPROVAL OF
### THE ORDER (A) AUTHORIZING DEBTORS TO (I)
### OBTAIN POST-PETITION FINANCING, AND (II) UTILIZE
### CASH COLLATERAL; (B) GRANTING ADEQUATE PROTECTION;
### AND (C) SCHEDULING INTERIM AND FINAL HEARINGS

Hitachi Capital America Corp., a Delaware corporation, ("**Hitachi**"), files this Objection

to the final approval of the Order (A) Authorizing Debtors to (I) Obtain Post-Petition Financing,

and (II) Utilize Cash Collateral; (b) Granting Adequate Protection; and (C) Scheduling Interim

and Final Hearing ("**DIP Facility Order**") [Dkt. #34]. In support of this Objection, Hitachi

states and alleges as follows:

### INTRODUCTION

1.      MMR Holdings, Inc. ("**MMR**") filed a voluntary petition for relief under Chapter

11, Title 11 of the United States Code (the "**Bankruptcy Code**"), on April 14, 2010 (the

"**Petition Date**"). MMR's bankruptcy case is being jointly administered with thirteen (13) of its

subsidiaries (collectively, the "**Debtors**").

2.      Pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, Debtors are

continuing to operate their businesses as debtors in possession. No trustee or examiner has been

appointed, and no official committee of creditors or equity interest holders has yet been

established in this Chapter 11 case.

3.      This Court has jurisdiction over this Objection pursuant to 28 U.S.C. § 1334.

This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1), and 157(b)(2)(A) and (M). Venue

is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND FACTS

### *The Loan to Debtor OpenSided MRI of Cleveland, L.L.C*

4.     On March 23, 2006, Hitachi loaned Debtor OpenSided MRI of Cleveland, L.L.C. ("**Cleveland**") $307,227.84.

5.     On that same date, Cleveland made, executed, and delivered to Hitachi a Schedule of Indebtedness and Collateral in the original principal amount of $307,227.84 (the "**Cleveland Schedule 001**"). A true and correct copy of the Cleveland Schedule 001 is attached to this Motion as **Exhibit A** and incorporated by this reference.

6.     Also on March 23, 2006, Cleveland executed and delivered to Hitachi a Master Loan and Security Agreement No. 31420 (the "**Cleveland Schedule 001 Security Agreement**"), in which Cleveland granted Hitachi a security interest in, and lien on, *inter alia*, in one (1) used Hitachi Medical Systems Airis MRI, along with all present and future enhancements, improvements, attachments and accessories thereto and replacements thereof and *products, profits and all cash and non-cash proceeds of any of the foregoing*, including, without limitation, amounts payable under any insurance policy (the "**Cleveland Schedule 001 Collateral**"), to secure Cleveland's payment obligations to Hitachi under the Cleveland Schedule 001. A true and correct copy of the Cleveland Schedule 001 Security Agreement is attached to this Motion as **Exhibit B** and incorporated by this reference.

7.     Also on March 23, 2006, Cleveland executed and delivered to Hitachi an Additional Collateral Security Agreement (the "**Cleveland Security Agreement**"), in which Cleveland granted Hitachi a security interest in, and lien on, the following:

> Debtor hereby grants Secured Party a security interest in the following described property all hereinafter referred to collectively as "Collateral" "Collateral" shall mean all existing and after-acquired equipment, goods, and inventory of Debtor and all proceeds thereof, including without limitation: (a) All of Debtor's present

3

and future inventory (including but not limited to goods held for sale or lease or furnished or to be furnished under contracts for service, raw materials, work-in-progress, finished goods and goods used or consumed in Debtor's business) whether owned, consumed or held on consignment, together with all merchandise, component materials, supplies, packing, packaging and shipping materials, and all returned, rejected or repossessed goods sold, consigned, leased or otherwise furnished by Debtor and all products and proceeds of any of the foregoing; (b) All of Debtor's present and future machinery, equipment, furniture, fixtures, motor vehicles, tools, dies, jigs, molds and other articles of tangible personal property of every type together with all parts, substitutions, accretions, accessions attachments, accessories, additions, components and replacements thereof, and all manuals of operation, maintenance or repair, and *all products and proceeds of any of the foregoing*.

(the "**Cleveland Security Agreement Collateral**") to secure Cleveland's payment obligations to Hitachi under the Cleveland Schedule 001. A true and correct copy of the Cleveland Security Agreement is attached to this Motion as **Exhibit C** and incorporated by this reference.

8.     Hitachi duly perfected its lien against the Cleveland Schedule 001 Collateral by filing a UCC-1 Financing Statement, Document No. 0605177167-6, with the Virginia State Corporation Commission on May 17, 2006, that listed Cleveland as the debtor and Hitachi as the secured party and that covered the Cleveland Schedule 001 Collateral (the "**Cleveland Schedule 001 Collateral Financing Statement**"). A true and correct copy of the Cleveland Schedule 001 Collateral Financing Statement is attached to this Motion as **Exhibit D** and incorporated by this reference.

9.     Hitachi duly perfected its lien against the Cleveland Security Agreement Collateral by filing a UCC-1 Financing Statement, Document No. 0605177168-8, with the Virginia State Corporation Commission on May 17, 2006, that listed Cleveland as the debtor and Hitachi as the secured party and that covered the Cleveland Security Agreement Collateral (the "**Cleveland Security Agreement Collateral Financing Statement**"). A true and correct copy

of the Cleveland Security Agreement Collateral Financing Statement is attached to this Motion as **Exhibit E** and incorporated by this reference.

10. Cleveland failed to make the payments required under the Cleveland Schedule 001 and is currently in default of its obligations under the Cleveland Schedule 001, Cleveland Schedule 001 Security Agreement, and Cleveland Security Agreement.

11. As of the Petition Date, Cleveland was indebted to Hitachi under the Cleveland Schedule 001 in the aggregate amount of $141,139.72 (the "**Cleveland Indebtedness**"), comprised of the following amounts: $123,132.37 in principal and unpaid interest, $9,809.85 in accrued late charges and $8,197.50 in collection fees and expenses. As of the Petition Date, Cleveland was past due on all remaining monthly payments of $9,809.85 to Hitachi under the Cleveland Schedule 001.

12. Within eighty-two (82) days of the Petition Date, on January 22, 2010, Bank of America, N.A. filed a UCC-1 Financing Statement, Document No. 1001227176-7, with the Virginia State Corporation Commission, that listed Cleveland as the debtor and Bank of America as the secured party and that granted Bank of America a security interest in, and lien on, the following:

> This Financing Statement covers, and the Debtor hereby grants the Secured Party, a security interest in the following property:
>
> Accounts: Any and all accounts and other rights of Debtor to the payment for goods sold or leases or for services rendered whether or not earned by performance, including, without limitation, contract rights, book debts, checks, notes, drafts, instruments, chattel paper, acceptances, and any and all amounts due to Debtor from a factor or other forms of obligations and receivables, now existing or hereafter arising.
>
> The Debtor also grants the Secured Party a security interest in property related to the above described property, including specifically, but without limitation: (a) all related present and future substitutions, replacements, appurtenances, accessories and accessions for such property; (b) all of the Debtor's related books,

records, computer programs, other software, computer files and diskettes or disk storage media and rights under any and all licenses to use computer programs, software, files and hardware that are related to such property; (c) all proceeds (cash and noncash, including insurance proceeds) and products of all such property, in any form whatsoever; and (d) all accounts, chattel paper, instruments, inventory, general intangibles or other goods or property purchased or acquired with cash and/or non-cash proceeds of such property. Debtor also grants the Secured Party a security interest in all amounts now and in the future owed by the Secured Party or any affiliate of the Secured Party to the Debtor and/or on deposit in any account maintained by the Debtor with the Secured Party or any affiliate of the Secured Party.

(the "**Cleveland Bank of America Financing Statement**"). A true and correct copy of the Cleveland Bank of America Financing Statement is attached to this Motion as **Exhibit F** and incorporated by this reference.

### *The Loan to Debtor OpenSided MRI of Denver, L.L.C*

13. On March 23, 2006, Hitachi loaned Debtor OpenSided MRI of Denver, L.L.C. ("**Denver**") $121,595.89.

14. On that same date, Denver made, executed, and delivered to Hitachi a Schedule of Indebtedness and Collateral in the original principal amount of $121,595.89 (the "**Denver Schedule 001**"). A true and correct copy of the Denver Schedule 001 is attached to this Motion as **Exhibit G** and incorporated by this reference.

15. Also on March 23, 2006, Denver executed and delivered to Hitachi a Master Loan and Security Agreement No. 31421 (the "**Denver Schedule 001 Security Agreement**"), in which Denver granted Hitachi a security interest in, and lien on, *inter alia*, in one (1) used Hitachi Medical Systems Airis MRI, along with all present and future enhancements, improvements, attachments and accessories thereto and replacements thereof and *products, profits and all cash and non-cash proceeds of any of the foregoing*, including, without limitation, amounts payable under any insurance policy (the "**Denver Schedule 001 Collateral**"), to secure

6

Denver's payment obligations to Hitachi under the Denver Schedule 001. A true and correct copy of the Denver Schedule 001 Security Agreement is attached to this Motion as **Exhibit H** and incorporated by this reference.

16.     Also on March 23, 2006, Denver executed and delivered to Hitachi an Additional Collateral Security Agreement (the "**Denver Security Agreement**"), in which Denver granted Hitachi a security interest in, and lien on, the following:

> Debtor hereby grants Secured Party a security interest in the following described property all hereinafter referred to collectively as "Collateral" "Collateral" shall mean all existing and after-acquired equipment, goods, and inventory of Debtor and all proceeds thereof, including without limitation: (a) All of Debtor's present and future inventory (including but not limited to goods held for sale or lease or furnished or to be furnished under contracts for service, raw materials, work-in-progress, finished goods and goods used or consumed in Debtor's business) whether owned, consumed or held on consignment, together with all merchandise, component materials, supplies, packing, packaging and shipping materials, and all returned, rejected or repossessed goods sold, consigned, leased or otherwise furnished by Debtor and all products and proceeds of any of the foregoing; (b) All of Debtor's present and future machinery, equipment, furniture, fixtures, motor vehicles, tools, dies, jigs, molds and other articles of tangible personal property of every type together with all parts, substitutions, accretions, accessions attachments, accessories, additions, components and replacements thereof, and all manuals of operation, maintenance or repair, and *all products and proceeds of any of the foregoing*.

(the "**Denver Security Agreement Collateral**") to secure Denver's payment obligations to Hitachi under the Denver Schedule 001. A true and correct copy of the Denver Security Agreement is attached to this Motion as **Exhibit I** and incorporated by this reference.

17.     Hitachi duly perfected its lien against the Denver Schedule 001 Collateral by filing a UCC-1 Financing Statement, Document No. 0605177166-4, with the Virginia State Corporation Commission on May 17, 2006, that listed Denver as the debtor and Hitachi as the secured party and that covered the Denver Schedule 001 Collateral (the "**Denver Schedule 001 Collateral Financing Statement**"). A true and correct copy of the Denver Schedule 001

Collateral Financing Statement is attached to this Motion as **Exhibit J** and incorporated by this reference.

18.     Hitachi duly perfected its lien against the Denver Security Agreement Collateral by filing a UCC-1 Financing Statement, Document No. 0605177164-0, with the Virginia State Corporation Commission on May 17, 2006, that listed Denver as the debtor and Hitachi as the secured party and that covered the Denver Security Agreement Collateral (the **"Denver Security Agreement Collateral Financing Statement"**). A true and correct copy of the Denver Security Agreement Collateral Financing Statement is attached to this Motion as **Exhibit K** and incorporated by this reference.

19.     Denver failed to make the payments required under the Denver Schedule 001 and is currently in default of its obligations under the Denver Schedule 001, Denver Schedule 001 Security Agreement, and Denver Security Agreement.

20.     As of the Petition Date, Denver was indebted to Hitachi under the Denver Schedule 001 in the aggregate amount of $61,775.72 (the **"Denver Indebtedness"**), comprised of the following amounts: $49,695.64 in principal and unpaid interest, $3,882.58 in accrued late charges and $8,197.50 in collection fees and expenses. As of the Petition Date, Denver was past due on all remaining monthly payments of $3,882.58 to Hitachi under the Denver Schedule 001.

21.     Within eighty-two (82) days of the Petition Date, on January 22, 2010, Bank of America, N.A. filed a UCC-1 Financing Statement, Document No. 1001227177-9, with the Virginia State Corporation Commission, that listed Denver as the debtor and Bank of America as the secured party and that granted Bank of America a security interest in, and lien on, the following:

> This Financing Statement covers, and the Debtor hereby grants the Secured Party, a security interest in the following property:

8

Accounts: Any and all accounts and other rights of Debtor to the payment for goods sold or leases or for services rendered whether or not earned by performance, including, without limitation, contract rights, book debts, checks, notes, drafts, instruments, chattel paper, acceptances, and any and all amounts due to Debtor from a factor or other forms of obligations and receivables, now existing or hereafter arising.

The Debtor also grants the Secured Party a security interest in property related to the above described property, including specifically, but without limitation: (a) all related present and future substitutions, replacements, appurtenances, accessories and accessions for such property; (b) all of the Debtor's related books, records, computer programs, other software, computer files and diskettes or disk storage media and rights under any and all licenses to use computer programs, software, files and hardware that are related to such property; (c) all proceeds (cash and noncash, including insurance proceeds) and products of all such property, in any form whatsoever; and (d) all accounts, chattel paper, instruments, inventory, general intangibles or other goods or property purchased or acquired with cash and/or non-cash proceeds of such property. Debtor also grants the Secured Party a security interest in all amounts now and in the future owed by the Secured Party or any affiliate of the Secured Party to the Debtor and/or on deposit in any account maintained by the Debtor with the Secured Party or any affiliate of the Secured Party.

(the "**Denver Bank of America Financing Statement**"). A true and correct copy of the Denver

Bank of America Financing Statement is attached to this Motion as **Exhibit L** and incorporated

by this reference.

### *The Loan to Debtor OpenSided MRI of Kansas, L.L.C*

22.     On March 23, 2006, Hitachi loaned Debtor OpenSided MRI of Kansas, L.L.C.

("**Kansas**") \$223,427.84.

23.     On that same date, Kansas made, executed, and delivered to Hitachi a Schedule of

Indebtedness and Collateral in the original principal amount of \$223,427.84 (the "**Kansas**

**Schedule 001**"). A true and correct copy of the Kansas Schedule 001 is attached to this Motion

as **Exhibit M** and incorporated by this reference.

24.     Also on March 23, 2006, Kansas executed and delivered to Hitachi a Master Loan and Security Agreement No. 31424 (the "**Kansas Schedule 001 Security Agreement**"), in which Kansas granted Hitachi a security interest in, and lien on, *inter alia*, in one (1) used Hitachi Medical Systems Airis MRI, along with all present and future enhancements, improvements, attachments and accessories thereto and replacements thereof and *products, profits and all cash and non-cash proceeds of any of the foregoing*, including, without limitation, amounts payable under any insurance policy (the "**Kansas Schedule 001 Collateral**"), to secure Kansas's payment obligations to Hitachi under the Kansas Schedule 001. A true and correct copy of the Kansas Schedule 001 Security Agreement is attached to this Motion as **Exhibit N** and incorporated by this reference.

25.     Also on March 23, 2006, Kansas executed and delivered to Hitachi an Additional Collateral Security Agreement (the "**Kansas Security Agreement**"), in which Kansas granted Hitachi a security interest in, and lien on, the following:

> Debtor hereby grants Secured Party a security interest in the following described property all hereinafter referred to collectively as "Collateral" "Collateral" shall mean all existing and after-acquired equipment, goods, and inventory of Debtor and all proceeds thereof, including without limitation: (a) All of Debtor's present and future inventory (including but not limited to goods held for sale or lease or furnished or to be furnished under contracts for service, raw materials, work-in-progress, finished goods and goods used or consumed in Debtor's business) whether owned, consumed or held on consignment, together with all merchandise, component materials, supplies, packing, packaging and shipping materials, and all returned, rejected or repossessed goods sold, consigned, leased or otherwise furnished by Debtor and all products and proceeds of any of the foregoing; (b) All of Debtor's present and future machinery, equipment, furniture, fixtures, motor vehicles, tools, dies, jigs, molds and other articles of tangible personal property of every type together with all parts, substitutions, accretions, accessions attachments, accessories, additions, components and replacements thereof, and all manuals of operation, maintenance or repair, and *all products and proceeds of any of the foregoing*.

(the **"Kansas Security Agreement Collateral"**) to secure Kansas's payment obligations to Hitachi under the Kansas Schedule 001. A true and correct copy of the Kansas Security Agreement is attached to this Motion as **Exhibit O** and incorporated by this reference.

26. Hitachi duly perfected its lien against the Kansas Schedule 001 Collateral by filing a UCC-1 Financing Statement, Document No. 0605177163-8, with the Virginia State Corporation Commission on May 17, 2006, that listed Kansas as the debtor and Hitachi as the secured party and that covered the Kansas Schedule 001 Collateral (the **"Kansas Schedule 001 Collateral Financing Statement"**). A true and correct copy of the Kansas Schedule 001 Collateral Financing Statement is attached to this Motion as **Exhibit P** and incorporated by this reference.

27. Hitachi duly perfected its lien against the Kansas Security Agreement Collateral by filing a UCC-1 Financing Statement, Document No. 0605177165-2, with the Virginia State Corporation Commission on May 17, 2006, that listed Kansas as the debtor and Hitachi as the secured party and that covered the Kansas Security Agreement Collateral (the **"Kansas Security Agreement Collateral Financing Statement"**). A true and correct copy of the Kansas Security Agreement Collateral Financing Statement is attached to this Motion as **Exhibit Q** and incorporated by this reference.

28. Kansas failed to make the payments required under the Kansas Schedule 001 and is currently in default of its obligations under the Kansas Schedule 001, Kansas Schedule 001 Security Agreement, and Kansas Security Agreement.

29. As of the Petition Date, Kansas was indebted to Hitachi under the Kansas Schedule 001 in the aggregate amount of $106,840.27 (the **"Kansas Indebtedness"**), comprised of the following amounts: $91,508.67 in principal and unpaid interest, $7,134.10 in accrued late

11

charges and $8,197.50 in collection fees and expenses. As of the Petition Date, Kansas was past due on all remaining monthly payments of $7,134.10 to Hitachi under the Kansas Schedule 001.

30.     Within eighty-two (82) days of the Petition Date, on January 22, 2010, Bank of America, N.A. filed a UCC-1 Financing Statement, Document No. 1001227179-3, with the Virginia State Corporation Commission, that listed Kansas as the debtor and Bank of America as the secured party and that granted Bank of America a security interest in, and lien on, the following:

This Financing Statement covers, and the Debtor hereby grants the Secured Party, a security interest in the following property:

Accounts: Any and all accounts and other rights of Debtor to the payment for goods sold or leases or for services rendered whether or not earned by performance, including, without limitation, contract rights, book debts, checks, notes, drafts, instruments, chattel paper, acceptances, and any and all amounts due to Debtor from a factor or other forms of obligations and receivables, now existing or hereafter arising.

The Debtor also grants the Secured Party a security interest in property related to the above described property, including specifically, but without limitation: (a) all related present and future substitutions, replacements, appurtenances, accessories and accessions for such property; (b) all of the Debtor's related books, records, computer programs, other software, computer files and diskettes or disk storage media and rights under any and all licenses to use computer programs, software, files and hardware that are related to such property; (c) all proceeds (cash and noncash, including insurance proceeds) and products of all such property, in any form whatsoever; and (d) all accounts, chattel paper, instruments, inventory, general intangibles or other goods or property purchased or acquired with cash and/or non-cash proceeds of such property. Debtor also grants the Secured Party a security interest in all amounts now and in the future owed by the Secured Party or any affiliate of the Secured Party to the Debtor and/or on deposit in any account maintained by the Debtor with the Secured Party or any affiliate of the Secured Party.

(the "**Kansas Bank of America Financing Statement**"). A true and correct copy of the Kansas Bank of America Financing Statement is attached to this Motion as **Exhibit R** and incorporated by this reference.

12

### *The Loan to Debtor OpenSided MRI of Las Vegas, L.L.C*

31.     On March 23, 2006, Hitachi loaned Debtor OpenSided MRI of Las Vegas, L.L.C.
("**Las Vegas**") $168,123.08.

32.     On that same date, Las Vegas made, executed, and delivered to Hitachi a
Schedule of Indebtedness and Collateral in the original principal amount of $168,123.08 (the
"**Las Vegas Schedule 001**"). A true and correct copy of the Las Vegas Schedule 001 is attached
to this Motion as **Exhibit S** and incorporated by this reference.

33.     Also on March 23, 2006, Las Vegas executed and delivered to Hitachi a Master
Loan and Security Agreement No. 31425 (the "**Las Vegas Schedule 001 Security Agreement**"),
in which Las Vegas granted Hitachi a security interest in, and lien on, *inter alia*, in one (1) used
Hitachi Medical Systems Airis MRI, along with all present and future enhancements,
improvements, attachments and accessories thereto and replacements thereof and *products,
profits and all cash and non-cash proceeds of any of the foregoing*, including, without limitation,
amounts payable under any insurance policy (the "**Las Vegas Schedule 001 Collateral**"), to
secure Las Vegas's payment obligations to Hitachi under the Las Vegas Schedule 001. A true
and correct copy of the Las Vegas Schedule 001 Security Agreement is attached to this Motion
as **Exhibit T** and incorporated by this reference.

34.     Also on March 23, 2006, Las Vegas executed and delivered to Hitachi an
Additional Collateral Security Agreement (the "**Las Vegas Security Agreement**"), in which Las
Vegas granted Hitachi a security interest in, and lien on, the following:

> Debtor hereby grants Secured Party a security interest in the following described
> property all hereinafter referred to collectively as "Collateral" "Collateral" shall
> mean all existing and after-acquired equipment, goods, and inventory of Debtor
> and all proceeds thereof, including without limitation: (a) All of Debtor's present
> and future inventory (including but not limited to goods held for sale or lease or
> furnished or to be furnished under contracts for service, raw materials, work-in-

13

progress, finished goods and goods used or consumed in Debtor's business) whether owned, consumed or held on consignment, together with all merchandise, component materials, supplies, packing, packaging and shipping materials, and all returned, rejected or repossessed goods sold, consigned, leased or otherwise furnished by Debtor and all products and proceeds of any of the foregoing; (b) All of Debtor's present and future machinery, equipment, furniture, fixtures, motor vehicles, tools, dies, jigs, molds and other articles of tangible personal property of every type together with all parts, substitutions, accretions, accessions attachments, accessories, additions, components and replacements thereof, and all manuals of operation, maintenance or repair, and *all products and proceeds of any of the foregoing*.

(the "**Las Vegas Security Agreement Collateral**") to secure Las Vegas's payment obligations to Hitachi under the Las Vegas Schedule 001. A true and correct copy of the Las Vegas Security Agreement is attached to this Motion as **Exhibit U** and incorporated by this reference.

35.     Hitachi duly perfected its lien against the Las Vegas Schedule 001 Collateral by filing a UCC-1 Financing Statement, Document No. 0605177171-5, with the Virginia State Corporation Commission on May 17, 2006, that listed Las Vegas as the debtor and Hitachi as the secured party and that covered the Las Vegas Schedule 001 Collateral (the "**Las Vegas Schedule 001 Collateral Financing Statement**"). A true and correct copy of the Las Vegas Schedule 001 Collateral Financing Statement is attached to this Motion as **Exhibit V** and incorporated by this reference.

36.     Hitachi duly perfected its lien against the Las Vegas Security Agreement Collateral by filing a UCC-1 Financing Statement, Document No. 0605177172-7, with the Virginia State Corporation Commission on May 17, 2006, that listed Las Vegas as the debtor and Hitachi as the secured party and that covered the Las Vegas Security Agreement Collateral (the "**Las Vegas Security Agreement Collateral Financing Statement**"). A true and correct copy of the Las Vegas Security Agreement Collateral Financing Statement is attached to this Motion as **Exhibit W** and incorporated by this reference.

14

37.     Las Vegas failed to make the payments required under the Las Vegas Schedule 001 and is currently in default of its obligations under the Las Vegas Schedule 001, Las Vegas Schedule 001 Security Agreement, and Las Vegas Security Agreement.

38.     As of the Petition Date, Las Vegas was indebted to Hitachi under the Las Vegas Schedule 001 in the aggregate amount of $82,361.24 (the "**Las Vegas Indebtedness**"), comprised of the following amounts: $68,795.54 in principal and unpaid interest, $5,368.20 in accrued late charges and $8,197.50 in collection fees and expenses. As of the Petition Date, Las Vegas was past due on all remaining monthly payments of $5,368.20 to Hitachi under the Las Vegas Schedule 001.

39.     Within eighty-two (82) days of the Petition Date, on January 22, 2010, Bank of America, N.A. filed a UCC-1 Financing Statement, Document No. 1001227170-5, with the Virginia State Corporation Commission, that listed Las Vegas as the debtor and Bank of America as the secured party and that granted Bank of America a security interest in, and lien on, the following:

> This Financing Statement covers, and the Debtor hereby grants the Secured Party, a security interest in the following property:
>
> Accounts: Any and all accounts and other rights of Debtor to the payment for goods sold or leases or for services rendered whether or not earned by performance, including, without limitation, contract rights, book debts, checks, notes, drafts, instruments, chattel paper, acceptances, and any and all amounts due to Debtor from a factor or other forms of obligations and receivables, now existing or hereafter arising.
>
> The Debtor also grants the Secured Party a security interest in property related to the above described property, including specifically, but without limitation: (a) all related present and future substitutions, replacements, appurtenances, accessories and accessions for such property; (b) all of the Debtor's related books, records, computer programs, other software, computer files and diskettes or disk storage media and rights under any and all licenses to use computer programs, software, files and hardware that are related to such property; (c) all proceeds (cash and noncash, including insurance proceeds) and products of all such

15

property, in any form whatsoever; and (d) all accounts, chattel paper, instruments, inventory, general intangibles or other goods or property purchased or acquired with cash and/or non-cash proceeds of such property. Debtor also grants the Secured Party a security interest in all amounts now and in the future owed by the Secured Party or any affiliate of the Secured Party to the Debtor and/or on deposit in any account maintained by the Debtor with the Secured Party or any affiliate of the Secured Party.

(the "**Las Vegas Bank of America Financing Statement**"). A true and correct copy of the Las Vegas Bank of America Financing Statement is attached to this Motion as **Exhibit X** and incorporated by this reference.

### *The Loan to Debtor OpenSided MRI of Louisville, L.L.C*

40.      On March 23, 2006, Hitachi loaned Debtor OpenSided MRI of Louisville, L.L.C. ("**Louisville**") $257,257.78.

41.      On that same date, Louisville made, executed, and delivered to Hitachi a Schedule of Indebtedness and Collateral in the original principal amount of $257,257.78 (the "**Louisville Schedule 001**"). A true and correct copy of the Louisville Schedule 001 is attached to this Motion as **Exhibit Y** and incorporated by this reference.

42.      Also on March 23, 2006, Louisville executed and delivered to Hitachi a Master Loan and Security Agreement No. 31426 (the "**Louisville Schedule 001 Security Agreement**"), in which Louisville granted Hitachi a security interest in, and lien on, *inter alia*, in one (1) used Hitachi Medical Systems Airis MRI, along with all present and future enhancements, improvements, attachments and accessories thereto and replacements thereof and *products, profits and all cash and non-cash proceeds of any of the foregoing*, including, without limitation, amounts payable under any insurance policy (the "**Louisville Schedule 001 Collateral**"), to secure Louisville's payment obligations to Hitachi under the Louisville Schedule 001. A true

16

and correct copy of the Louisville Schedule 001 Security Agreement is attached to this Motion as

**Exhibit Z** and incorporated by this reference.

43.     Also on March 23, 2006, Louisville executed and delivered to Hitachi an

Additional Collateral Security Agreement (the "**Louisville Security Agreement**"), in which

Louisville granted Hitachi a security interest in, and lien on, the following:

> Debtor hereby grants Secured Party a security interest in the following described
> property all hereinafter referred to collectively as "Collateral" "Collateral" shall
> mean all existing and after-acquired equipment, goods, and inventory of Debtor
> and all proceeds thereof, including without limitation: (a) All of Debtor's present
> and future inventory (including but not limited to goods held for sale or lease or
> furnished or to be furnished under contracts for service, raw materials, work-in-
> progress, finished goods and goods used or consumed in Debtor's business)
> whether owned, consumed or held on consignment, together with all merchandise,
> component materials, supplies, packing, packaging and shipping materials, and all
> returned, rejected or repossessed goods sold, consigned, leased or otherwise
> furnished by Debtor and all products and proceeds of any of the foregoing; (b) All
> of Debtor's present and future machinery, equipment, furniture, fixtures, motor
> vehicles, tools, dies, jigs, molds and other articles of tangible personal property of
> every type together with all parts, substitutions, accretions, accessions
> attachments, accessories, additions, components and replacements thereof, and all
> manuals of operation, maintenance or repair, and *all products and proceeds of any*
> *of the foregoing*.

(the "**Louisville Security Agreement Collateral**") to secure Louisville's payment obligations to

Hitachi under the Louisville Schedule 001. A true and correct copy of the Louisville Security

Agreement is attached to this Motion as **Exhibit AA** and incorporated by this reference.

44.     Hitachi duly perfected its lien against the Louisville Schedule 001 Collateral by

filing a UCC-1 Financing Statement, Document No. 0605177162-6, with the Virginia State

Corporation Commission on May 17, 2006, that listed Louisville as the debtor and Hitachi as the

secured party and that covered the Louisville Schedule 001 Collateral (the "**Louisville Schedule**

**001 Collateral Financing Statement**"). A true and correct copy of the Louisville Schedule 001

Collateral Financing Statement is attached to this Motion as **Exhibit BB** and incorporated by this reference.

45.     Hitachi duly perfected its lien against the Louisville Security Agreement Collateral by filing a UCC-1 Financing Statement, Document No. 0605177159-9, with the Virginia State Corporation Commission on May 17, 2006, that listed Louisville as the debtor and Hitachi as the secured party and that covered the Louisville Security Agreement Collateral (the "**Louisville Security Agreement Collateral Financing Statement**"). A true and correct copy of the Louisville Security Agreement Collateral Financing Statement is attached to this Motion as **Exhibit CC** and incorporated by this reference.

46.     Louisville failed to make the payments required under the Louisville Schedule 001 and is currently in default of its obligations under the Louisville Schedule 001, Louisville Schedule 001 Security Agreement, and Louisville Security Agreement.

47.     As of the Petition Date, Louisville was indebted to Hitachi under the Louisville Schedule 001 in the aggregate amount of $121,813.66 (the "**Louisville Indebtedness**"), comprised of the following amounts: $105,401.87 in principal and unpaid interest, $8,214.29 in accrued late charges and $8,197.50 in collection fees and expenses. As of the Petition Date, Louisville was past due on all remaining monthly payments of $8,214.29 to Hitachi under the Louisville Schedule 001.

48.     Within eighty-two (82) days of the Petition Date, on January 22, 2010, Bank of America, N.A. filed a UCC-1 Financing Statement, Document No. 1001227169-2, with the Virginia State Corporation Commission, that listed Louisville as the debtor and Bank of America as the secured party and that granted Bank of America a security interest in, and lien on, the following:

This Financing Statement covers, and the Debtor hereby grants the Secured Party, a security interest in the following property:

Accounts: Any and all accounts and other rights of Debtor to the payment for goods sold or leases or for services rendered whether or not earned by performance, including, without limitation, contract rights, book debts, checks, notes, drafts, instruments, chattel paper, acceptances, and any and all amounts due to Debtor from a factor or other forms of obligations and receivables, now existing or hereafter arising.

The Debtor also grants the Secured Party a security interest in property related to the above described property, including specifically, but without limitation: (a) all related present and future substitutions, replacements, appurtenances, accessories and accessions for such property; (b) all of the Debtor's related books, records, computer programs, other software, computer files and diskettes or disk storage media and rights under any and all licenses to use computer programs, software, files and hardware that are related to such property; (c) all proceeds (cash and noncash, including insurance proceeds) and products of all such property, in any form whatsoever; and (d) all accounts, chattel paper, instruments, inventory, general intangibles or other goods or property purchased or acquired with cash and/or non-cash proceeds of such property. Debtor also grants the Secured Party a security interest in all amounts now and in the future owed by the Secured Party or any affiliate of the Secured Party to the Debtor and/or on deposit in any account maintained by the Debtor with the Secured Party or any affiliate of the Secured Party.

(the "**Louisville Bank of America Financing Statement**"). A true and correct copy of the

Louisville Bank of America Financing Statement is attached to this Motion as **Exhibit DD** and

incorporated by this reference.

### *The Loan to Debtor OpenSided MRI of Oklahoma City, L.L.C*

49. On March 23, 2006, Hitachi loaned Debtor OpenSided MRI of Oklahoma City,

L.L.C. ("**Oklahoma City**") $240,998.23.

50. On that same date, Oklahoma City made, executed, and delivered to Hitachi a

Schedule of Indebtedness and Collateral in the original principal amount of $240,998.23 (the

"**Oklahoma City Schedule 001**"). A true and correct copy of the Oklahoma City Schedule 001

is attached to this Motion as **Exhibit EE** and incorporated by this reference.

51.    Also on March 23, 2006, Oklahoma City executed and delivered to Hitachi a Master Loan and Security Agreement No. 31428 (the "**Oklahoma City Schedule 001 Security Agreement**"), in which Oklahoma City granted Hitachi a security interest in, and lien on, *inter alia*, in one (1) used Hitachi Medical Systems Airis MRI, along with all present and future enhancements, improvements, attachments and accessories thereto and replacements thereof and *products, profits and all cash and non-cash proceeds of any of the foregoing*, including, without limitation, amounts payable under any insurance policy (the "**Oklahoma City Schedule 001 Collateral**"), to secure Oklahoma City's payment obligations to Hitachi under the Oklahoma City Schedule 001.    A true and correct copy of the Oklahoma City Schedule 001 Security Agreement is attached to this Motion as **Exhibit FF** and incorporated by this reference.

52.    Also on March 23, 2006, Oklahoma City executed and delivered to Hitachi an Additional Collateral Security Agreement (the "**Oklahoma City Security Agreement**"), in which Oklahoma City granted Hitachi a security interest in, and lien on, the following:

Debtor hereby grants Secured Party a security interest in the following described property all hereinafter referred to collectively as "Collateral" "Collateral" shall mean all existing and after-acquired equipment, goods, and inventory of Debtor and all proceeds thereof, including without limitation: (a) All of Debtor's present and future inventory (including but not limited to goods held for sale or lease or furnished or to be furnished under contracts for service, raw materials, work-in-progress, finished goods and goods used or consumed in Debtor's business) whether owned, consumed or held on consignment, together with all merchandise, component materials, supplies, packing, packaging and shipping materials, and all returned, rejected or repossessed goods sold, consigned, leased or otherwise furnished by Debtor and all products and proceeds of any of the foregoing; (b) All of Debtor's present and future machinery, equipment, furniture, fixtures, motor vehicles, tools, dies, jigs, molds and other articles of tangible personal property of every type together with all parts, substitutions, accretions, accessions attachments, accessories, additions, components and replacements thereof, and all manuals of operation, maintenance or repair, and *all products and proceeds of any of the foregoing.*

(the "**Oklahoma City Security Agreement Collateral**") to secure Oklahoma City's payment obligations to Hitachi under the Oklahoma City Schedule 001. A true and correct copy of the Oklahoma City Security Agreement is attached to this Motion as **Exhibit GG** and incorporated by this reference.

53.     Hitachi duly perfected its lien against the Oklahoma City Schedule 001 Collateral by filing a UCC-1 Financing Statement, Document No. 0605177160-2, with the Virginia State Corporation Commission on May 17, 2006, that listed Oklahoma City as the debtor and Hitachi as the secured party and that covered the Oklahoma City Schedule 001 Collateral (the "**Oklahoma City Schedule 001 Collateral Financing Statement**"). A true and correct copy of the Oklahoma City Schedule 001 Collateral Financing Statement is attached to this Motion as **Exhibit HH** and incorporated by this reference.

54.     Hitachi duly perfected its lien against the Oklahoma City Security Agreement Collateral by filing a UCC-1 Financing Statement, Document No. 0605177161-4, with the Virginia State Corporation Commission on May 17, 2006, that listed Oklahoma City as the debtor and Hitachi as the secured party and that covered the Oklahoma City Security Agreement Collateral (the "**Oklahoma City Security Agreement Collateral Financing Statement**"). A true and correct copy of the Oklahoma City Security Agreement Collateral Financing Statement is attached to this Motion as **Exhibit II** and incorporated by this reference.

55.     Oklahoma City failed to make the payments required under the Oklahoma City Schedule 001 and is currently in default of its obligations under the Oklahoma City Schedule 001, Oklahoma City Schedule 001 Security Agreement, and Oklahoma City Security Agreement.

56.     As of the Petition Date, Oklahoma City was indebted to Hitachi under the Oklahoma City Schedule 001 in the aggregate amount of $114,616.81 (the "**Oklahoma City**

**Indebtedness**"), comprised of the following amounts: $98,724.19 in principal and unpaid interest, $7,695.12 in accrued late charges and $8,197.50 in collection fees and expenses. As of the Petition Date, Oklahoma City was past due on all remaining monthly payments of $7,695.12 to Hitachi under the Oklahoma City Schedule 001.

57.     Within eighty-two (82) days of the Petition Date, on January 22, 2010, Bank of America, N.A. filed a UCC-1 Financing Statement, Document No. 1001227174-3, with the Virginia State Corporation Commission, that listed Oklahoma City as the debtor and Bank of America as the secured party and that granted Bank of America a security interest in, and lien on, the following:

> This Financing Statement covers, and the Debtor hereby grants the Secured Party, a security interest in the following property:
>
> Accounts: Any and all accounts and other rights of Debtor to the payment for goods sold or leases or for services rendered whether or not earned by performance, including, without limitation, contract rights, book debts, checks, notes, drafts, instruments, chattel paper, acceptances, and any and all amounts due to Debtor from a factor or other forms of obligations and receivables, now existing or hereafter arising.
>
> The Debtor also grants the Secured Party a security interest in property related to the above described property, including specifically, but without limitation: (a) all related present and future substitutions, replacements, appurtenances, accessories and accessions for such property; (b) all of the Debtor's related books, records, computer programs, other software, computer files and diskettes or disk storage media and rights under any and all licenses to use computer programs, software, files and hardware that are related to such property; (c) all proceeds (cash and noncash, including insurance proceeds) and products of all such property, in any form whatsoever; and (d) all accounts, chattel paper, instruments, inventory, general intangibles or other goods or property purchased or acquired with cash and/or non-cash proceeds of such property. Debtor also grants the Secured Party a security interest in all amounts now and in the future owed by the Secured Party or any affiliate of the Secured Party to the Debtor and/or on deposit in any account maintained by the Debtor with the Secured Party or any affiliate of the Secured Party.

22

(the "**Oklahoma City Bank of America Financing Statement**"). A true and correct copy of the Oklahoma City Bank of America Financing Statement is attached to this Motion as **Exhibit JJ** and incorporated by this reference.

### *The Loan to Debtor OpenSided MRI of San Antonio, L.L.C*

58. On March 23, 2006, Hitachi loaned Debtor OpenSided MRI of San Antonio, L.L.C. ("**San Antonio**") $112,135.74.

59. On that same date, San Antonio made, executed, and delivered to Hitachi a Schedule of Indebtedness and Collateral in the original principal amount of $112,135.74 (the "**San Antonio Schedule 001**"). A true and correct copy of the San Antonio Schedule 001 is attached to this Motion as **Exhibit KK** and incorporated by this reference.

60. Also on March 23, 2006, San Antonio executed and delivered to Hitachi a Master Loan and Security Agreement No. 31430 (the "**San Antonio Schedule 001 Security Agreement**"), in which San Antonio granted Hitachi a security interest in, and lien on, *inter alia*, in one (1) used Hitachi Medical Systems Airis MRI, along with all present and future enhancements, improvements, attachments and accessories thereto and replacements thereof and *products, profits and all cash and non-cash proceeds of any of the foregoing*, including, without limitation, amounts payable under any insurance policy (the "**San Antonio Schedule 001 Collateral**"), to secure San Antonio's payment obligations to Hitachi under the San Antonio Schedule 001. A true and correct copy of the San Antonio Schedule 001 Security Agreement is attached to this Motion as **Exhibit LL** and incorporated by this reference.

61. Also on March 23, 2006, San Antonio executed and delivered to Hitachi an Additional Collateral Security Agreement (the "**San Antonio Security Agreement**"), in which San Antonio granted Hitachi a security interest in, and lien on, the following:

> Debtor hereby grants Secured Party a security interest in the following described property all hereinafter referred to collectively as "Collateral" "Collateral" shall mean all existing and after-acquired equipment, goods, and inventory of Debtor and all proceeds thereof, including without limitation: (a) All of Debtor's present and future inventory (including but not limited to goods held for sale or lease or furnished or to be furnished under contracts for service, raw materials, work-in-progress, finished goods and goods used or consumed in Debtor's business) whether owned, consumed or held on consignment, together with all merchandise, component materials, supplies, packing, packaging and shipping materials, and all returned, rejected or repossessed goods sold, consigned, leased or otherwise furnished by Debtor and all products and proceeds of any of the foregoing; (b) All of Debtor's present and future machinery, equipment, furniture, fixtures, motor vehicles, tools, dies, jigs, molds and other articles of tangible personal property of every type together with all parts, substitutions, accretions, accessions attachments, accessories, additions, components and replacements thereof, and all manuals of operation, maintenance or repair, and *all products and proceeds of any of the foregoing*.

(the "**San Antonio Security Agreement Collateral**") to secure San Antonio's payment obligations to Hitachi under the San Antonio Schedule 001. A true and correct copy of the San Antonio Security Agreement is attached to this Motion as **Exhibit MM** and incorporated by this reference.

62.     Hitachi duly perfected its lien against the San Antonio Schedule 001 Collateral by filing a UCC-1 Financing Statement, Document No. 0605177170-3, with the Virginia State Corporation Commission on May 17, 2006, that listed San Antonio as the debtor and Hitachi as the secured party and that covered the San Antonio Schedule 001 Collateral (the "**San Antonio Schedule 001 Collateral Financing Statement**"). A true and correct copy of the San Antonio Schedule 001 Collateral Financing Statement is attached to this Motion as **Exhibit NN** and incorporated by this reference.

63.     Hitachi duly perfected its lien against the San Antonio Security Agreement Collateral by filing a UCC-1 Financing Statement, Document No. 0605177169-0, with the Virginia State Corporation Commission on May 17, 2006, that listed San Antonio as the debtor

24

and Hitachi as the secured party and that covered the San Antonio Security Agreement Collateral (the "**San Antonio Security Agreement Collateral Financing Statement**"). A true and correct copy of the San Antonio Security Agreement Collateral Financing Statement is attached to this Motion as **Exhibit OO** and incorporated by this reference.

64.     San Antonio failed to make the payments required under the San Antonio Schedule 001 and is currently in default of its obligations under the San Antonio Schedule 001, San Antonio Schedule 001 Security Agreement, and San Antonio Security Agreement.

65.     As of the Petition Date, San Antonio was indebted to Hitachi under the San Antonio Schedule 001 in the aggregate amount of $57,580.51 (the "**San Antonio Indebtedness**"), comprised of the following amounts:  $45,802.49 in principal and unpaid interest, $3,580.52 in accrued late charges and $8,197.50 in collection fees and expenses.  As of the Petition Date, San Antonio was past due on all remaining monthly payments of $3,580.52 to Hitachi under the San Antonio Schedule 001.

66.     Within eighty-two (82) days of the Petition Date, on January 22, 2010, Bank of America, N.A. filed a UCC-1 Financing Statement, Document No. 1001227172-9, with the Virginia State Corporation Commission, that listed San Antonio as the debtor and Bank of America as the secured party and that granted Bank of America a security interest in, and lien on, the following:

> This Financing Statement covers, and the Debtor hereby grants the Secured Party, a security interest in the following property:
>
> Accounts:  Any and all accounts and other rights of Debtor to the payment for goods sold or leases or for services rendered whether or not earned by performance, including, without limitation, contract rights, book debts, checks, notes, drafts, instruments, chattel paper, acceptances, and any and all amounts due to Debtor from a factor or other forms of obligations and receivables, now existing or hereafter arising.

The Debtor also grants the Secured Party a security interest in property related to the above described property, including specifically, but without limitation: (a) all related present and future substitutions, replacements, appurtenances, accessories and accessions for such property; (b) all of the Debtor's related books, records, computer programs, other software, computer files and diskettes or disk storage media and rights under any and all licenses to use computer programs, software, files and hardware that are related to such property; (c) all proceeds (cash and noncash, including insurance proceeds) and products of all such property, in any form whatsoever; and (d) all accounts, chattel paper, instruments, inventory, general intangibles or other goods or property purchased or acquired with cash and/or non-cash proceeds of such property. Debtor also grants the Secured Party a security interest in all amounts now and in the future owed by the Secured Party or any affiliate of the Secured Party to the Debtor and/or on deposit in any account maintained by the Debtor with the Secured Party or any affiliate of the Secured Party.

(the "**San Antonio Bank of America Financing Statement**"). A true and correct copy of the San Antonio Bank of America Financing Statement is attached to this Motion as **Exhibit PP** and incorporated by this reference.

67. The Cleveland Schedule 001, Denver Schedule 001, Kansas Schedule 001, Las Vegas Schedule 001, Louisville Schedule 001, Oklahoma City Schedule 001, and San Antonio Schedule 001 (collectively, the "**Schedules 001**"); the Cleveland Schedule 001 Security Agreement, Denver Schedule 001 Security Agreement, Kansas Schedule 001 Security Agreement, Las Vegas Schedule 001 Security Agreement, Louisville Schedule 001 Security Agreement, Oklahoma City Schedule 001 Security Agreement, and San Antonio Schedule 001 Security Agreement (collectively, the "**Schedule 001 Security Agreements**"); the Cleveland Security Agreement, Denver Security Agreement, Kansas Security Agreement, Las Vegas Security Agreement, Louisville Security Agreement, Oklahoma City Security Agreement, and San Antonio Security Agreement (collectively, the "**Security Agreements**"); the Cleveland Schedule 001 Collateral Financing Statement, Denver Schedule 001 Collateral Financing Statement, Kansas Schedule 001 Collateral Financing Statement, Las Vegas Schedule 001

Collateral Financing Statement, Louisville Schedule 001 Collateral Financing Statement, Oklahoma City Schedule 001 Collateral Financing Statement, and San Antonio Schedule 001 Collateral Financing Statement (collectively, the **"Schedule 001 Collateral Financing Statements"**); and the Cleveland Security Agreement Collateral Financing Statement, Denver Security Agreement Collateral Financing Statement, Kansas Security Agreement Collateral Financing Statement, Las Vegas Security Agreement Collateral Financing Statement, Louisville Security Agreement Collateral Financing Statement, Oklahoma City Security Agreement Collateral Financing Statement, and San Antonio Security Agreement Collateral Financing Statement (collectively, the **"Security Agreement Collateral Financing Statements"**), together with any and all other documents that evidence or secure the Cleveland Indebtedness, Denver Indebtedness, Kansas Indebtedness, Las Vegas Indebtedness, Louisville Indebtedness, Oklahoma City Indebtedness, and San Antonio Indebtedness (collectively, the **"Indebtedness"**) owed under Schedules 001 are sometimes referred to in this Objection collectively as the **"Loan Documents."**

## RELIEF REQUESTED AND BASIS FOR SUCH RELIEF

68. Section 552 of the Bankruptcy Code provides as follows:

(a) Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.

(b)(1) . . . , if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to *proceeds*, *products*, offspring, or *profits of such property*, then such security interest extends to such *proceeds*, *products*, offspring, or *profits* acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

27

(emphasis added).

69. The security interest taken by Hitachi in the collateral described within the Schedule 001 Collateral Financing Statements and Security Agreement Collateral Financing Statements (collectively, the "**Collateral**") extends to four of the five categories of property enumerated in Section 552(b)(1) of the Bankruptcy Code which survive post-petition.

70. Specifically, to the extent any of the Cleveland's, Denver's, Kansas's, Las Vegas's, Louisville's, Oklahoma City's, and San Antonio's (collectively, the "**Hitachi Debtors**") equipment, goods, and inventory, and other tangible personal property was acquired by the Hitachi Debtors prior to the Petition Date, Hitachi retains a security interest in that equipment, goods, and inventory, and other tangible personal property. Further, Hitachi retains a security interest in the "products" and "proceeds" from the Hitachi Debtors' equipment, goods, and inventory, and other tangible personal property.

71. Additionally, to the extent any of the collateral described within the Schedule 001 Collateral Financing Statements was acquired by the Hitachi Debtors prior to the Petition Date, Hitachi retains a security interest in that collateral. Further, Hitachi retains a security interest in the "products," "profits," and "proceeds" of the collateral described within the Schedule 001 Collateral Financing Statements.

72. Section 9-102(a)(64) of the Uniform Commercial Code defines "proceeds" as follows:

(A) whatever is acquired upon the sale, lease, license, exchange, or other disposition of collateral;
(B) whatever is collected on, or distributed on account of, collateral;
(C) rights arising out of collateral[2].

---

[2] *See also* OHIO REV. CODE ANN. § 1309.102; COLO. REV. STAT. § 4-9-102; KAN. STAT. ANN. § 84-9-102; NEV. REV. STAT. § 104.9102; KY. REV. STAT. ANN. § 355.9-102; OKLA. STAT. ANN. tit. 12A, § 1-9-102; TEX. BUSINESS AND COMMERCE CODE ANN. § 9.102.

28

73. The revenue generated by the Hitachi Debtors in their use of the Hitachi Medical Systems Airis MRIs are either proceeds "collected on . . . account of, collateral" or "product" or "profits" of the Hitachi Debtors' businesses. Under either classification, Hitachi retains a security interest in the revenue generated by the Hitachi Debtors in their post-petition use of the Hitachi Medical Systems Airis MRIs. *See In re Northeastern Copy Services, Inc.*, 175 B.R. 580, 583 (Bankr. E.D. Pa. 1994) (holding that the cash generated by Debtor's performance of post-petition copy services was not "proceeds" of Debtor's pre-petition property subject to the creditor's security interest in the copiers and further holding that the cash generated by the post-petition services was, among the five enumerated categories of property subject to pre-petition security interests in bankruptcy pursuant to § 552(b), most closely analogous to "product" or "profits" of Debtor's business). Accordingly, given that the Hitachi Medical Systems Airis MRIs are the primary source of revenue for the Hitachi Debtors, Hitachi has a valid, binding, enforceable, and perfected lien on all of the revenue generated by the Hitachi Debtors.

74. Additionally, given that the Cleveland Bank of America Financing Statement, Denver Bank of America Financing Statement, Kansas Bank of America Financing Statement, Las Vegas Bank of America Financing Statement, Louisville Bank of America Financing Statement, Oklahoma City Bank of America Financing Statement, and San Antonio Bank of America Financing Statement (collectively, the **"Bank of America Financing Statements"**) were filed subsequent to Hitachi's Schedule 001 Collateral Financing Statements and Security Agreement Collateral Financing Statements (collectively, the **"Hitachi Financing Statements"**), Bank of America, N.A.'s security interest in the Collateral, including, but not limited to, all of the revenue generated by the Hitachi Debtors, is subordinate and subject to Hitachi's security interest in the Collateral. Moreover, given that the Bank of America Financing Statements were

filed within ninety (90) days of the Petition Date, any security interest that Bank of America, N.A. may have in the Collateral, including, but not limited to, all of the revenue generated by the Hitachi Debtors, is subject to avoidance pursuant to Section 547 of the Bankruptcy Code and may even qualify as a fraudulent conveyance, given the lack of consideration flowing from Bank of America, N.A. to the Hitachi Debtors.

75.     Hitachi does not dispute that Bank of America, N.A. may have a valid, binding, enforceable, and perfected first-priority lien on MMR Holdings, Inc.'s collateral. However, just because Bank of America, N.A. may have a valid, binding, enforceable, and perfected first-priority lien on MMR Holdings, Inc.'s collateral, this does not create or entitle Bank of America, N.A. to a valid, binding, enforceable, and perfected first-priority lien on the Hitachi Debtors' collateral—subsidiaries of MMR Holdings, Inc. MMR Holdings, Inc. and the Hitachi Debtors are separate legal entities. *See Advanced Analytics Laboratories, Inc. v. Environmental Aspecs, Inc. of North Carolina and Southtrust Bank, National Association (In re Environmental Aspecs, Inc.)*, 235 B.R. 378, 391 (E.D. N.C. 1999) (holding that "[c]ourts have *not* tended to treat parent and subsidiary corporations as interchangeable entities for purposes of secured transactions") (emphasis added). Accordingly, in order for Bank of America, N.A. to have a valid, binding, enforceable, and perfected first-priority lien on the Hitachi Debtors' collateral, Bank of America, N.A. was required to secure and perfect that interest in accordance with Article 9 of the Uniform Commercial Code, requiring filed financing statements that list the Hitachi Debtors as the debtor and Bank of America, N.A. as the secured party and that grant Bank of America a security interest in, and lien on, the Hitachi Debtors' collateral. *Id.* at 393 (holding that "a financing statement listing EAI as debtor [was not] sufficient to perfect an interest in the assets of EAI's subsidiary based on the parent-subsidiary nature of the companies' relationship").

76. On account of the foregoing, any security interest that Bank of America, N.A. may have in the Collateral, including, but not limited to, all of the revenue generated by the Hitachi Debtors, is subordinate and subject to Hitachi's security interest in the Collateral. Bank of America, N.A. is entitled at most, to a valid, binding, enforceable, and perfected first-priority lien on MMR Holdings, Inc.'s collateral and cash collateral, as defined by Section 363(a) of the Bankruptcy Code.

77. Accordingly, Hitachi objects to the DIP Facility Order to extent that it orders and finds that Bank of America, N.A. has a valid, binding, enforceable, and perfected first-priority lien on the Collateral, including, but not limited to, all of the revenue generated by the Hitachi Debtors, that is not subject to avoidance. Hitachi further objects to the DIP Facility Order to the extent that it authorizes the Hitachi Debtors to use cash collateral, as defined by Section 363(a) of the Bankruptcy Code, that is subject to Hitachi's security interest in same.

WHEREFORE, Hitachi Capital America Corp., a Delaware corporation, respectfully requests that the Court enter the following:

        a.      An Order denying final approval of the DIP Facility Order;

        b.      An Order finding Bank of America, N.A.'s security interest in the Collateral, including, but not limited to, all of the revenue generated by the Hitachi Debtors, is subordinate and subject to Hitachi's security interest in the Collateral;

        c.      An Order preventing the Hitachi Debtors from using cash collateral, as defined by Section 363(a) of the Bankruptcy Code, that is subject to Hitachi's security interest in same; and

        d.      An Order granting such other and further relief as the Court deems just and proper.

31

Dated: 5-17-10

HITACHI CAPITAL AMERICA CORP.

By_____

Robert B. Hill (VSB No. 18751)
HILL AND RAINEY ATTORNEYS
2425 Boulevard, Suite 9
Colonial Heights, Virginia 23834
Phone: (804) 526-8300
Fax: (804) 526-2872
E-mail: bhill@hillrainey.com

and

Randall F. Scherck, Esq.
LATHROP & GAGE LLP
Pierre Laclede Center
7701 Forsyth Boulevard, Suite 400
Clayton, Missouri 63105
Telephone: (314) 613-2800
Telecopier: (314) 613-2801
E-mail: rscherck@lathropgage.com

Attorneys For Hitachi Capital America Corp.

## CERTIFICATE OF SERVICE

I, Robert B. Hill, hereby certify that, on May $\underline{\hspace{0.5cm}17^{th}}$, 2010, a copy of the above and foregoing was served, by First Class United States Mail, Postage Prepaid, on the following:

Robert B. Van Arsdale
701 E. Broad Street, Suite 4304
Richmond, VA 23219
*Office of the U.S. Trustee*

Robert S. Westermann
Hirschler Fleisher, P.C.
2100 East Cary Street
The Edgeworth Building
Richmond, VA 23223
*Attorney for Debtors*

David K. Spiro
Hirschler Fleisher, P.C.
Post Office Box 500
Richmond, VA 23218-0500
*Attorney for Debtors*

Robert A. Cox, Jr.
McGuire Woods, LLP
201 North Tryon Street
Charlotte, North Carolina 28202
*Attorney for Bank of America, N.A.*

Robert B. Hill
An Attorney For Hitachi Capital America Corp.

33